[No. 22414. Department Two. September 8, 1930.]

FLORENCE BUSS VAN DUSEN, *Appellant*, v. THE DEPART-
MENT OF LABOR AND INDUSTRIES, *Respondent*.[1]

*G. M. Ferris* and *F. M. O'Leary*, for appellant.

*The Attorney General* and *Harry Ellsworth Foster*,
for respondent.

MAIN, J.—This is an appeal from a judgment of the
superior court affirming an order of the department of
labor and industries denying an application for a
widow's pension under the workmen's compensation
act.

March 18, 1929, Donald L. Van Dusen, while in the
employ of the Northwest Radio Service Company, was
killed, and thereafter his widow, Florence Buss Van
Dusen, filed a claim with the department of labor and
industries, as stated. The Northwest Radio Service
Company is a corporation, and owns and operates
radio station KGA, at Spokane, this state. The station

[1] Reported in 290 Pac. 803.

is operated with five thousand watts power, under license from the Federal radio commission. The station, at all times, was connected by telephone lines with cities in other states, for the purpose of receiving and rebroadcasting programs originating in New York, Chicago, St. Louis, Kansas City and San Francisco.

In the course of the operation of the station, it became necessary to install an ice machine for the purpose of producing cold water, which was used in cooling the radio tubes employed in the transmitting station, and, unless the tubes were properly cooled, the transmission of programs from the stations mentioned would be seriously impaired, if not altogether stopped.

March 17, 1929, the station signed off for the night at approximately 11:15 p. m. Immediately thereafter, the employees of the station commenced operations for the installation of the ice machine, and, in doing so, it was necessary to move the switchboard in the room in which the ice machine was to be located. The switchboard was an integral part of the apparatus used in the transmitting station in broadcasting programs from KGA. While moving, or attempting to move, the switchboard, Donald L. Van Dusen was accidentally electrocuted. His death occurred at about 12:15 a. m., March 18, 1929. Mr. Van Dusen was an employee of the radio station and, at the time of his death, was engaged in work classified as extrahazardous, under the workmen's compensation act. It is admitted that station KGA, during the hours that it was broadcasting, was carrying on a business interstate in character.

The question is whether the removal of the switchboard, preparatory to the installation of the ice machine, was a work so closely related to interstate commerce, in which the station was engaged, as to be a part of such commerce. If Mr. Van Dusen, at the time of his death, was engaged in work so closely re-

lated to interstate commerce as to be practically a part of it, the department of labor and industries correctly rejected the widow's claim for pension, and the judgment of the superior court should be affirmed.

In *Shanks v. Delaware etc. R. Co.*, 239 U. S. 556, the railroad company was engaged in both interstate and intrastate transportation, and was conducting an extensive machine shop for repairing parts of locomotives used in such transportation. While employed in this shop, one Shanks was injured through the negligence of the company. On the day of the injury, he was engaged solely in taking down and putting into a new location an overhead crank shaft, a heavy shop fixture through which power was transmitted to some of the machinery used in the repair work. It was there held that Shanks could not maintain an action under the Federal employers' liability act, because, at the time of his injury, he was not engaged in work so closely related to interstate commerce as to be a part of it. The previous cases of the court were there reviewed. We will quote extensively from the opinion in that case, wherein it was said:

"Having in mind the nature and usual course of the business to which the act relates and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion (see *Swift & Co. v. United States,* 196 U. S. 375, 398), and that the true test of employment in such commerce in the sense intended is, was the employe at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it.

"Applying this test, we have held that the requisite employment in interstate commerce exists where a car repairer is replacing a drawbar in a car then in use in such commerce, *Walsh v. New York, New Haven & Hartford R. Co.*, 223 U. S. 1; where a fireman is walking

ahead of and piloting through several switches a locomotive which is to be attached to an interstate train and to assist in moving the same up a grade, *Norfolk & Western Ry. v. Earnest,* 229 U. S. 114; where a workman about to repair a bridge regularly used in interstate transportation is carrying from a tool car to the bridge a sack of bolts needed in his work, *Pederson v. Del., Lack. & West. R. Co.,* 229 U. S. 146; where a clerk is on his way through a railroad yard to meet an inbound interstate freight train and to mark the cars so the switching crew will know what to do with them when breaking up the train, *St. Louis, San Francisco & Texas R. v. Seale,* 229 U. S. 156; where a fireman, having prepared his engine for a trip in interstate commerce, and being about to start on his run, is walking across adjacent tracks on an errand consistent with his duties, *North Carolina R. Co. v. Zachary,* 232 U. S. 248; and where a brakeman on a train carrying several cars of interstate and two of intrastate freight is assisting in securely placing the latter on a side track at an intermediate station to the end that they may not run back on the main track and that the train may proceed on its journey with the interstate freight, *New York Central R. Co. v. Carr,* 238 U. S. 260.

"Without departing from this test, we also have held that the requisite employment in interstate commerce does not exist where a member of a switching crew, whose general work extends to both interstate and intrastate traffic, is engaged in hauling a train or drag of cars, all loaded with intrastate freight, from one part of a city to another, *Ill. Cent. R. Co. v. Behrens,* 233 U. S. 473, and where an employe in a colliery operated by a railroad company is mining coal intended to be used in the company's locomotives moving in interstate commerce, *Del., Lack. & West. R. Co. v. Yurkonis,* 238 U. S. 439. In neither instance could the service indicated be said to be interstate transportation or so closely related to it as to be practically a part of it.

"Coming to apply the test to the case in hand, it is plain that Shanks was not employed in interstate transportation, or in repairing or keeping in usable

condition a roadbed, bridge, engine, car or other instrument then in use in such transportation. What he was doing was altering the location of a fixture in a machine shop. The connection between the fixture and interstate transportation was remote at best, for the only function of the fixture was to communicate power to machinery used in repairing parts of engines some of which were used in such transportation. This, we think, demonstrates that the work in which Shanks was engaged, like that of the coal miner in the Yurkonis Case, was too remote from interstate transportation to be practically a part of it, and therefore that he was not employed in interstate commerce within the meaning of the Employers' Liability Act.''

In *Kinzell v. Chicago, Milwaukee & St. Paul R. Co.*, 250 U. S. 130, it was held that the doing of work which has for its immediate purpose the furthering of the conduct of interstate commerce constitutes an employment in such commerce within the meaning of the employers' liability act. It was there said:

''It is also settled that the doing of work which has for its immediate purpose the furthering of the conduct of interstate commerce constitutes an employment in such commerce within the meaning of the act.'' (Citing authorities.)

Applying the test stated in those two cases, it must be held in the case now before us that Mr. Van Dusen, at the time of his death, was engaged in work so closely related to interstate commerce as to be a part of it. This case is distinguished from the *Shanks* case, in that there, *Shanks*, at the time of his death, was doing work which was one step further removed from interstate commerce than was Mr. Van Dusen in the present case. Here the telephone exchange was an integral part of the broadcasting system, and had been used in connection therewith. It was pointed out in the *Shanks* case that one replacing a drawbar in a car then used in interstate commerce, or carrying a sack

of bolts from a tool car to repair a bridge used in such commerce was engaged in work so intimately connected with interstate commerce as to be a part of it. The work in which Mr. Van Dusen was engaged at the time of his death was of the same character.

Since the *Shanks* case was decided, the Federal supreme court has decided two cases which support the view that Mr. Van Dusen, at the time of his death, was engaged in work so intimately connected with interstate commerce as to be a part of it. In *Southern R. Co. v. Puckett*, 244 U. S. 571, it was held that one injured while he was helping in the task of raising a wrecked car to rescue a fellow workman, and incidentally to clear the track for interstate commerce, was engaged in commerce of that character within the Federal employers' liability act.

In *New York Central R. R. Co. v. Porter*, 249 U. S. 168, it was held that an employee of a railway company killed by a train while removing snow from a space between the platform and a track used in interstate commerce, as well as intrastate commerce, was employed in interstate commerce, and the resulting rights and liabilities were determined by the Federal employers' liability act, and that the state workmen's compensation act was inapplicable.

The cases of *Raymond v. Chicago, Milwaukee & St. Paul R. Co.*, 243 U. S. 43, and *New York Central R. R. Co. v. White*, 243 U. S. 188, relied upon by the appellant, are distinguishable. In the *Raymond* case, the plaintiff was employed by the defendant, an interstate carrier, and was injured while laboring in the tunnel which was then being constructed by defendant for the purpose of shortening its main line between Chicago and Seattle. It was held that no cause of action existed under the Federal employers' liability act, because the tunnel was only partially completed and was

not in use, and had not been used as an instrumentality of interstate commerce. In the *White* case, it was held that one employed in guarding tools and materials intended for use in the construction of a new railroad station and new tracks, which, when finished, would be used in interstate commerce, had no such direct relation to such commerce as to bring the case of accident and death within the Federal employers' liability act.

In each of those cases, the accident occurred while the employee was engaged with something that had at no time been brought into interstate commerce, but which, when completed, was intended to be so used. In the present case, Mr. Van Dusen, at the time of his death, was assisting in the removal of the telephone exchange, which had previously been used as an integral part of the radio station which was engaged in interstate commerce.

Our attention has been called to Rem. Comp. Stat., § 7695, which is one of the sections of the workmen's compensation act, but, since, as we have found, Mr. Van Dusen, at the time of his death, was engaged in work so closely related to interstate commerce as to be a part of it, that section has no application.

The judgment will be affirmed.

MITCHELL, C. J., FULLERTON, and FRENCH, JJ., concur.