[No. 25302. Department One. May 27, 1935.]

FISHER'S BLEND STATION, INC., *Respondent,* v. THE STATE TAX COMMISSION *et al., Appellants.*[1]

[1]Reported in 45 P. (2d) 942.

164

*The Attorney General* and *E. P. Donnelly, Assistant,* for appellants.

*Venables, Graham & Howe,* for respondent.

BEALS, J. — Plaintiff, a domestic corporation, operates two radio stations in the city of Seattle, and instituted this action for the purpose of enjoining the defendants, the members of the tax commission of the state of Washington, from enforcing against plaintiff an occupation tax, pursuant to chapter 191, Laws of 1933, p. 869 (Rem. 1934 Sup., §§ 8326-1 to 8326-30 [P. C. §§ 7068-31 to 7068-61], inc.). In its complaint, plaintiff alleged that it was engaged solely in the business of radio broadcasting; that this occupation constitutes interstate commerce; and that the tax sought to be levied against plaintiff, amounting under the statute to one per cent of plaintiff's gross income, constitutes an illegal and unconstitutional burden upon interstate commerce, and that plaintiff is not liable to pay the same.

Plaintiff also alleged its operation of the two stations—one as owner, the other as lessee—pursuant to licenses issued by the Federal Radio Commission, subject to use and control by the Federal government, in accordance with Federal statutes, and under call letters, radio frequencies and watt power as fixed by the Federal commission. Plaintiff further alleged that its two radio stations were broadcasting commercially, covering a designated area embracing the state of Washington and several other states of the Union, besides certain parts of the Dominion of Canada and an area of the Pacific ocean; that such broadcasting from plaintiff's stations has been continuous and effective, and constitutes a valuable and remunerative business; that the facilities of plaintiff's stations are greatly in demand, the stations forming links in a system of na-

tional and Pacific coast broadcasting; and that the value of the operating systems of the two stations is approximately six hundred thousand dollars.

Defendants demurred to plaintiff's complaint, and upon their demurrer being overruled, the complaint was amended by a stipulation containing certain agreed statements of fact. Defendants renewed their demurrer to the amended complaint, and upon their second demurrer being overruled, elected not to plead further, whereupon a decree was entered granting the prayer of plaintiff's complaint and permanently enjoining defendants from levying the tax against plaintiff, from which decree defendants have appealed.

Respondent contends that it is engaged solely in interstate commerce, and that a tax upon the gross receipts derived from radio broadcasting amounts to a tax upon interstate commerce and cannot be collected, the same being in contravention of the commerce clause of the constitution of the United States.

Appellants assign error upon the overruling of their demurrer, and upon the entry of a decree permanently enjoining them from levying a tax upon respondent in an amount equal to one per cent of the gross income received by respondent from its activities as operator of the two radio stations.

By § 5 of the act (Rem. 1934 Sup., § 8326-5 [P. C., § 7068-35]), it is provided that, in computing the amount of the tax, there shall be excepted from gross proceeds such portion thereof as may be derived from business which the state of Washington is, by the constitution or laws of the United States, prohibited from taxing. Appellants concede that gross income derived from interstate business cannot be considered in computing the tax. As respondent has no income save from its two stations, the question is squarely presented: Is such a tax as is here under attack, when

levied upon the gross income of radio broadcasting stations, a burden upon interstate commerce, or does broadcasting, for the purposes of the statute above referred to, constitute intrastate business, upon which the state is entitled to receive the tax provided for by statute?

It is, of course, manifest that broadcasting stations and the operation thereof, whether commercial or private, must be under the control of the Federal government. The electro-magnetic waves released from such stations pass through space to varying distances, at approximately the speed of light, registering here and there as they go upon different receiving appliances properly attuned to transmute the waves into audible sound. The ether which surrounds us and serves as a connecting medium between the broadcasting mechanism and the receiving point recognizes no state or national boundary, and, indeed, we know not whether the activity of the magnetic vibrations is limited merely to the atmosphere which surrounds our planet. It must be admitted that, in their activities, the waves which are intentionally released by broadcasting stations in the course of their business are, in their field of activities, essentially interstate and international.

Radio broadcasting, then, whether commercial or private, from its very nature must be under the control of the Federal authorities, and the Congress, undoubtedly, has the constitutional prerogative to control the same. In time of war or calamity, the activities connected with radio must be, on the one hand, at the service of the government for its purposes, and, on the other, used by private individuals only as may be permitted under regulations necessary to preserve the public safety. Federal control of broadcasting is essential, also, in order that stations may operate without undue interference from other stations, and

that lanes and zones may be carved out of the ether, thereby allowing each station to function to a maximum of advantage and with a minimum of interference. It must be conceded that, once the magnetic waves are released from a broadcasting station, they become an interstate and international activity, or energy, and in the present state of the art are, generally speaking, subject to no human control, save, of course, that they can be interfered with or blanketed by other and stronger waves released at strategic points.

As respondent is attacking the constitutionality of a revenue law, the burden rests quite heavily upon it to establish the facts upon which it bases its claim that the statute is, as to respondent, invalid. *Weaver v. Palmer Bros. Co.*, 270 U. S. 402 (410), 46 S. Ct. 320; *Detroit International Bridge Co. v. Corporation Tax Appeal Board*, 287 U. S. 295, 53 S. Ct. 137; *St. Louis S. W. R. Co. v. Arkansas*, 235 U. S. 350, 35 S. Ct. 99; *Interstate Busses Corporation v. Holyoke S. R. Co.*, 273 U. S. 45, 47 S. Ct. 298. Statutes providing for the raising of revenue required by the state in carrying on its functions are vital to its welfare, and a person, natural or artificial, should not be declared exempt from the payment of a tax required of business generally, unless it clearly appears that the constitution and laws of the United States (or of the state) require such exemption.

Referring to the tax imposed by the legislature on commercial activities, from which respondent claims that it is exempt, this court, in the case of *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P. (2d) 91, said:

"These commercial businesses are peculiarly dependent upon the state for protection in order that they may be carried on successfully, and they, more than all others, are responsible for, and receive the benefit of, that which the state expends in maintaining peace and order and the safety of private property."

168

The tax levied is for revenue, not regulation. *Pacific Tel. & Tel. Co. v. Seattle,* 172 Wash. 649, 21 P. (2d) 721.

The statute here in question does not levy a license tax, nor a tax based upon corporate stock, but imposes a tax, by way of an excise, upon business activities or functions, the tax to be computed by figuring a percentage of the gross income received by the taxpayer. Payment of the tax is not a prerequisite to the right to engage in business, save in so far as process to enforce payment of a delinquent tax might interfere with the taxpayer's affairs. In passing upon such questions as are here presented, courts pay less attention to form than to substance, and also consider the operation of a law as applied and enforced by the state authorities.

 It must now be considered whether or not respondent's business is, from the standpoint of the tax sought herein to be enjoined, interstate, or whether, for the purposes of the statute in question, it should be held to be an intrastate business and subject to payment of the tax. Of course, a business may be, to some extent, interstate in its nature and still not come within the purview of the commerce clause of the Federal constitution. Many newspapers circulate beyond state lines, carrying their advertising indiscriminately to all readers, but would scarcely, for that reason, be classified as engaged in interstate commerce. It has been held that a business consisting of representing merchants in placing with publishers advertisements in magazines which are published and distributed throughout the United States, is not interstate commerce, although the circulation and distribution of the magazines themselves be such commerce. *Blumenstock Bros. Advertising Agency v. Curtis Publishing Co.,* 252 U. S. 436, 40 S. Ct. 385. An advertising billboard might be so placed as to carry its message to persons

beyond the boundary of the state in which it was located, but the maintaining of such an advertising medium would scarcely be classified as interstate business. There are other similar instances.

Because of the many recent taxing statutes, whereby the several states seek to raise necessary additional revenue, the question of what constitutes interstate commerce, considered from the standpoint of such revenue acts, has been of late years presented frequently and from new angles. It must always be remembered that the *regulation* by a state of an interstate business is one thing; the *raising of revenue* by a state by levying taxes is another and, to some extent at least, a different thing. We are not here concerned with the levying of an ordinary property tax. Respondent does not question any tax levied by the state of Washington upon its tangible property, but contends that, by seeking to collect a tax based upon the gross revenue which it receives from its broadcasting station, the state is laying a burden upon interstate commerce and seeking to exact a payment which it has no right to demand.

It is not here contended that respondent's business constitutes a governmental agency, and for that reason cannot be taxed. That question has been suggested in other cases, but is not here urged, respondent relying solely upon the proposition that the tax to which it objects is a burden upon interstate commerce.

Respondent's business necessarily falls into two classes—broadcasting for which it receives compensation, and that for which it receives nothing. The tax here in question is, of course, no burden upon respondent's business, in so far as its uncompensated activities are concerned. No question is here presented, then, exactly analogous to cases in which the right of the state, or a subordinate agency thereof, to demand payment of a license fee as a prerequisite either to op-

erating a broadcasting station or owning a receiving set, was considered. Neither is the act under attack any burden upon the use of respondent's stations, either by itself for its own purposes, or by those to whom the courtesy of the station is donated. The tax which appellants seek to collect is a direct burden upon the business of respondent only in so far as it derives an income from leasing its stations to others for compensation.

The supreme court of the United States has held that a state tax which only indirectly or remotely burdens interstate commerce is not obnoxious to the constitutional provision relied upon by respondent. *Federal Compress etc. Co. v. McLean,* 291 U. S. 17, 54 S. Ct. 267; *Edelman v. Boeing Air Transport,* 289 U. S. 249, 53 S. Ct. 591; *Hall v. Geiger-Jones Co.,* 242 U. S. 539, 37 S. Ct. 217, Ann. Cas. 1917C, 643, L. R. A. 1917F, 514. In this connection, the supreme court of the United States, in the case of *U. S. Fidelity & Guaranty Co. v. Kentucky,* 231 U. S. 394, 34 S. Ct. 122, upheld an excise or privilege tax levied by the state, the tax being resisted upon the ground that it was a direct interference with interstate commerce. In the course of its opinion, the court said:

"To warrant interference with the exercise of the taxing power of a State on the ground that it obstructs or hampers interstate commerce, it must appear that the burden is direct and substantial. We do not think the present is such a case."

Respondent's complaint contains no allegation to the effect that, as a part of its business, it transmits special point-to-point messages. This branch of radio service, therefore, need not be considered. Neither does respondent contend that its facilities are leased to anyone for the purpose of conducting scientific experiments. It clearly appears from the complaint that

respondent's stations are used only for commercial broadcasting, and that branch of the art is the only one with which we are here concerned.

A very similar question was before the supreme court of Georgia in the case of *Atlanta v. Oglethorpe University,* 178 Ga. 379, 173 S. E. 110. In the case cited, the plaintiff sought an injunction against the enforcement by the city of an ordinance providing for the payment to the city of a business license required by the city from those following certain occupations or businesses. The plaintiff contended, *inter alia,* that, in conducting a broadcasting station, it was engaged in interstate commerce, and that the city could not exact payment of a business license based upon the fact that plaintiff owned and operated a broadcasting station. The court held that broadcasting was not an interstate business, even though the magnetic waves discharged from plaintiff's station passed beyond the boundaries of Georgia. The court considered that the broadcasting business was almost altogether intrastate, and that its income was received from what should be called intrastate business. The court properly considered the basic facts of the situation, rather than those which were incidental thereto.

The supreme court of the United States, in the case of *Utah Power & Light Co. v. Pfost,* 286 U. S. 165, 52 S. Ct. 548, held valid an act of the legislature of Idaho levying a license tax on plants for the production of electrical energy as levied against a corporation which maintained a power plant in Idaho for the generation of electricity, most of the product being disposed of in the state of Utah. The court held that the tax was not a burden upon interstate commerce, saying, in the course of its opinion:

"We are satisfied, upon a consideration of the whole case, that the process of generation is as essentially

local as though electrical energy were a physical thing; and to that situation we must apply, as controlling, the general rule that commerce does not begin until manufacture is finished, and hence the commerce clause of the Constitution does not prevent the state from exercising exclusive control over the manufacture. *Cornell v. Coyne,* 192 U. S. 418, 428-429. 'Commerce succeeds to manufacture, and is not a part of it.' *United States v. E. C. Knight Co.,* 156 U. S. 1, 12.''

It has been held that the state may levy a tax based upon the intrastate gross receipts of corporations selling natural gas, although the product was brought without interruption from its source in another state to the place of consumption in the state levying the tax. It was held that the reduction of the pressure under which the gas moved from a higher to a lower rate as the gas moved in the local mains was equivalent to the opening of an original package, and that, therefore, the distribution of the gas to the consumers was essentially a local business, and that the tax did not burden interstate commerce. *East Ohio Gas Co. v. Tax Commission,* 283 U. S. 465, 51 S. Ct. 499. It is, of course, true that the carrying of gas or oil through a state constitutes interstate commerce. *Ozark Pipe Line Corporation v. Monier,* 266 U. S. 555, 45 S. Ct. 184. But, in our opinion, the principle involved in the case cited and other authorities to the same effect is not controlling here.

The cases cited are important as indicating that, in passing upon the validity of state statutes levying taxes, the supreme court of the United States gives the states the benefit of the doubt and holds the acts valid unless they beyond question directly burden interstate commerce.

In the case of *Henderson Bridge Co. v. Kentucky,* 166 U. S. 150, 17 S. Ct. 532, it appeared that the bridge company, a Kentucky corporation, owned railroad

trackage and a bridge between the states of Kentucky and Indiana. It was held that a tax levied by the state of Kentucky upon the corporation's franchise was valid. The court distinguished between the levying of such a tax, citing *Central Pacific Railroad v. California,* 162 U. S. 91, 16 S. Ct. 766, and the attempted regulation by the state of tolls for use of the interstate bridge. *Covington & Cincinnati Bridge Co. v. Kentucky,* 154 U. S. 204, 14 S. Ct. 1087. Considering the matter at issue, the court summed up the question as follows:

"Clearly the tax was not a tax on the interstate business carried on over or by means of the bridge, because the bridge company did not transact such business. That business was carried on by the persons and corporations which paid the bridge company tolls for the privilege of using the bridge. The fact that the tax in question was to some extent affected by the amount of the tolls received, and therefore might be supposed to increase the rate of tolls, is too remote and incidental to make it a tax on the business transacted. This very question was decided in *Erie Railroad v. Pennsylvania,* 158 U. S. 431, 439, where it was said: 'It is argued that the imposition of a tax on tolls might lead to increasing them in an effort to throw their burthen on the carrying company. Such a result is merely conjectural, and, at all events, too remote and indirect to be an interference with interstate commerce. The interference with the commercial power must be direct, and not the mere incidental effect of the requirement of the usual proportional contribution to public maintenance.' The only franchises treated here as the subject of taxation were those granted by the State of Kentucky. So far as the State of Indiana could be said to have conferred any franchise upon the company, it was a franchise that inhered in that portion of the structure that was within the State of Indiana, the value of which was not included in the tax complained of."

174

In the recent case of *Detroit International Bridge Co. v. Corporation Tax Appeal Board,* 294 U. S. 83, the court upheld the tax sought to be levied by the state of Michigan against the bridge company for the privilege of exercising its franchise and of transacting its business within the state. The tax was levied by way of an annual fee upon each dollar of corporation paid-up capital and surplus; property or capital located without the state to be excluded, as well as such of the capital as was represented by property exclusively used in interstate commerce. The tax was characterized by the supreme court of Michigan as "a privilege tax imposed as an incident to the right to be a corporation and exercise corporate functions by means of paid-up capital and surplus." The powers of the corporation were by its charter limited to the ownership and operation of a highway bridge crossing the Detroit river from Detroit, Michigan, to Sandwich, Ontario, operated as a toll bridge, from which tolls the corporation derived its sole income.

The supreme court of Michigan upheld the validity of the tax as against the bridge company, which, on appeal to the supreme court of the United States, argued that, as its only power under its charter was to engage in foreign commerce, a state tax for the privilege of so doing would burden such commerce and offend the Federal constitution. It appeared that the bridge company itself conveyed no persons or goods across the international boundary; it collected toll from persons using the bridge; the company merely provided "an instrumentality which others may use in conducting foreign commerce." The supreme court, quoting with approval from its opinion in the case of *Henderson Bridge Co. v. Kentucky, supra,* held that the owner of an interstate bridge collecting compensation from persons using the same was not engaged in

interstate commerce, and affirmed the decree of the supreme court of Michigan upholding the validity of the tax.

Appellants argue here that, if the owner of an international or interstate bridge, who rents that facility to persons engaged in interstate commerce, is not itself engaged in such commerce, it should be held that the owner of a broadcasting station, who rents to others the facilities thereby afforded, should not be held, for the purposes of the statute now before us, to be engaged in interstate commerce. The surrounding ether may be likened to the bridge, and, while respondent does not lease the ether, it does lease a device which enables its patron to use the ether as a "bridge" or medium of communication between the station and such receiving appliances as may be so attuned as to reproduce the message released through space.

Respondent seeks to distinguish the Detroit bridge case by calling attention to the fact that the tax there in question was levied upon the privilege of conducting business, but was not levied upon the business itself. There is, of course, that difference between the question decided in the case cited and that which must be determined here. The supreme court of the United States, however, has said that the ownership of an international bridge and the collection of tolls from persons who use the same does not constitute interstate commerce. While, of course, the language of the decision must be limited to the question which was presented, and the case cited is, therefore, not controlling here, the reasoning is most persuasive, and the language used applies with great force to the situation here presented.

Respondent cites several authorities which clearly hold that a statute purporting to levy an occupation

tax upon an interstate business constitutes a burden upon interstate commerce and is obnoxious to the Federal constitution. *Sprout v. South Bend,* 277 U. S. 163, 48 S. Ct. 502, 62 A. L. R. 45; *Philadelphia & Southern Steamship Co. v. Pennsylvania,* 122 U. S. 326, 7 S. Ct. 1118. Respondent also calls attention to the fact that the tax which was sustained by the supreme court of the United States in the case of *Henderson Bridge Co. v. Kentucky, supra,* was a property tax, while the tax here in question is not a property, but an occupation, tax. *State ex rel. Stiner v. Yelle, supra.*

Respondent relies upon the case of *Van Dusen v. Department of Labor and Industries,* 158 Wash. 414, 290 Pac. 803, in which it was held that a workman engaged in removing a telephone switchboard, located in a room forming part of the plant of a broadcasting station, was engaged in interstate commerce, and was not within the protection of the industrial insurance law. The telephone switchboard was an integral part of the apparatus used in the station in the course of its broadcasting operations, and was being removed for the purpose of installing an ice machine which was to be used in cooling water for use in connection with the radio tubes. It was held that the removal of the switchboard was "a work so closely related to interstate commerce, in which the station was engaged, as to be a part of such commerce."

Respondent also relies upon the case of *Station WBT v. Poulnot,* 46 Fed. (2d) 671, in which the United States district court enjoined a sheriff from enforcing collection of a tax sought to be collected pursuant to an act of the legislature of South Carolina requiring a payment by each owner of a radio receiving set, the amount of the tax varying somewhat upon the nature of the set owned. It was not sought to levy the tax as

a part of the general system for the taxation of property, the law evidently contemplating the collection of a license tax for the privilege of using the device. The court held that a radio receiving set is an instrument used in interstate commerce, and that a state could not require payment of a license fee by the owner of such a set as a prerequisite to use thereof. The court also held that the law could not be sustained as a matter of local regulation, as that sphere had been preempted by the Federal government.

The converse of the proposition last discussed is found in the opinion of the United States district court for a Kentucky district in the case of *Whitehurst v. Grimes,* 21 Fed. (2d) 787. This was an action brought to restrain a chief of police from enforcing collection of a license which a municipal ordinance required to be paid by any person operating a broadcasting station. The court held that the business of radio broadcasting was in its nature interstate, that the field of regulation and control of such stations had been preempted by the United States, and that the municipal ordinance was void, as an interference with interstate commerce.

It cannot be denied that radio broadcasting is, in its sphere of activity, essentially interstate and international. It has been held in the cases above referred to, probably upon sound reason, that the use by a person of his own station constitutes interstate commerce, as does the setting up and operation of a receiving set. In the *Van Dusen* case, *supra,* this court properly held that a workman engaged, as was Mr. Van Dusen, in making alterations in a broadcasting station was engaged in interstate commerce. That case would be authority for holding that a workman employed in building the bridge between Detroit and Canada would also have been engaged in international commerce.

Such a bridge is undoubtedly a facility used in connection with foreign commerce, but the supreme court of the United States has held that the owner of the structure, in charging tolls for its use, is not engaged in such a business.

It seems clear that the supreme court of the United States, while protecting to the fullest extent the right of the Federal government under the constitution to regulate interstate and international commerce, is, on the other hand, inclined to hold that the respective states, in so far as their right to raise revenue by taxation is concerned, should be accorded as liberal a construction of the Federal constitution and laws as is consistent with the preservation of every right necessary to enable the Congress to protect interstate commerce against interference. A discriminatory tax would undoubtedly be held to constitute such interference, but, from the standpoint of justice and equity, and a proper support of government, every reason exists for as general a distribution of a fair burden of taxation as can possibly be accomplished.

In the case of *Sprout v. South Bend, supra,* the supreme court of the United States held invalid a city ordinance requiring payment of a license fee by the operator of a motor bus carrying passengers between South Bend and a point in Michigan. The operator of the stage was, of course, engaged in interstate commerce, himself carrying passengers from one state to another, and the ordinance was, naturally, held void. In the earlier case of *Philadelphia & Southern Steamship Co. v. Pennsylvania, supra,* the same court held that a state statute levying a tax upon the receipts of a corporation engaged in interstate and foreign commerce was obnoxious to the Federal constitution. In these and other similar cases, it was, of course, unquestionably the fact that the person resisting the levy

of the tax was actually engaged in interstate commerce.

In so far as the conduct of its business affairs by respondent is concerned, it is all purely intrastate. Its plants are entirely within the state of Washington; its contracts provide only for the use of its stations and the recognized facilities thereof, including their power to project electro-magnetic waves. Respondent completes its contracts with its patrons when it turns over its stations to them or to their agents, and it is none of respondent's concern, as long as the stations function properly, where or by whom the waves or vibrations which it causes to be released are received and transmuted into sound. Respondent completes its contract and earns its compensation regardless of whether five stations or five thousand receive the message. In this connection, the holding of the supreme court of Georgia in the case of *Atlanta v. Oglethorpe University, supra,* is in point, and we agree with that court in holding that, as a practical proposition, broadcasting similar to that with which we are here concerned is an intrastate business, considered in connection with such a tax as is here in question. As to whether or not a state could exact a license fee for the privilege of operating a broadcasting station, we express no opinion.

The tax which is here sought to be restrained is an excise or occupation tax, paid very generally by persons engaged in business in this state. It is not contended that the tax, in so far as the same affects respondent, is discriminatory, capricious or unfair. Respondent relies exclusively upon a supposed constitutional exemption from the payment of such a tax. Assuming that the state could not exact a license fee for the privilege of operating a broadcasting station, as the use thereof by the owner himself, or by his representative, might well be held to be interstate commerce

180

(clearly a point-to-point broadcast, the points being in two different states, would constitute interstate business); assuming further that the state could not exact a fee by way of a license for the privilege of owning a receiving set or device, as such an appliance in most instances would be used in connection with broadcasts released in other states, nevertheless, bearing in mind the principles above stated and the authorities cited, we hold that the state may levy the tax here in question, computed upon the gross amount which respondent receives for the rental of its facilities. In so far as respondent itself uses its stations, it pays no tax, and in so far as it allows others to use them for compensation, it is not engaged in interstate commerce. *Detroit International Bridge Co. v. Corporation Tax Appeal Board, supra.*

If it be that the tax does affect interstate commerce, it does so merely incidentally, and does not constitute a burden thereon to such an extent as to require a holding that the tax is void as to respondent as obnoxious to the commerce clause of the Federal constitution.

The judgment appealed from is reversed, with instructions to the trial court to enter judgment in appellants' favor denying respondent any relief and dismissing the action.

MAIN, TOLMAN, and GERAGHTY, JJ., concur.

MILLARD, C. J. (dissenting) — I am convinced that radio broadcasting is interstate commerce, therefore the state may not levy an occupation tax against respondent. The judgment should be affirmed.