JOHN J. O'KANE, JR., and PHILIP C. KULLMAN, JR., as Copartners Doing Business as JOHN J. O'KANE, JR., & Co., Claimants, v. THE STATE OF NEW YORK, Defendant.

(Claim No. 24798.)

Court of Claims, December 22, 1939.

■■■■■■■■

■■■■■■■■

*Earl Q. Kullman,* for the claimants.

*John J. Bennett, Jr., Attorney-General [Jacob S. Honigsbaum, Assistant Attorney-General,* of counsel], for the defendant.

BARRETT, P. J. This is a claim for the recovery of moneys alleged to have been erroneously paid in the form of stock transfer taxes. An application pursuant to section 280 of the Tax Law for the refund of said moneys was rejected by the Tax Commission, and following that rejection the claim was filed against the State. The claimants are copartners engaged in the stock brokerage business in the city of New York with offices at 42 Broadway. On October 17, 1936, a written confirmation of sale to Kennedy & Company of Philadelphia, Pa., of 200 shares of stock of dividend shares at one dollar and ninety cents was mailed by Kennedy & Company to claimants and received at their New York office. On October 20, 1936, claimants mailed their confirmation of the sale to Kennedy & Company at Philadelphia, Pa. On the same day the Pennsylvania Company at Philadelphia mailed to claimants at their offices in New York city its receipt to the effect that it had received a draft for the purchase price of the stock with shares of stock attached and with the receipt was sent a check in payment of the stock. This procedure followed the usual course where stock was purchased over the telephone or otherwise and where the seller sent a sight draft for collection with the stock attached, which sight draft is honored by the purchaser and then the stock is delivered.

The same procedure was followed in the sale of fifty-six and one-quarter shares of stock of the Republic Natural Gas to Butcher & Sherred of Philadelphia and in the sale of sixty-six shares of stock of Delaware Valley Utilities at two dollars and fifty cents a share to John B. Babbage & Company of Washington, D. C. Stock transfer tax stamps were affixed to these transactions under sections 270 and 270-a of the Tax Law of this State. Under section 270 it is provided in substance that there shall be collected a tax on all sales or *agreements to sell or memorandum of sales* and all deliveries or transfers of shares or certificates of stock. Under section 270-a there is imposed upon the same transactions an additional emergency tax.

It is claimed that the imposition of such taxes upon the transactions in question was in violation of the commerce provisions of the Constitution of the United States (Art. 1, § 8, cl. 3, and art. 1, § 10, cl. 2) and also in violation of section 1 of the Fourteenth

Amendment, which provides, in substance, so far as applicable that a State shall not make or enforce any law depriving any person of property without due process of law. So far as the Kennedy & Company transaction is concerned, a telephone call or other message was received by claimants at their offices in New York city for the purchase of the stock. Claimants sent their memoranda of sale to Kennedy & Company; then the certificates of stock were sent to a banking company in Philadelphia from New York to be held by the banking company until a sight draft sent by claimants was honored, and when the draft was honored the banking company sent a check in payment of the stock to claimants at New York city. Clearly the agreement to sell and memoranda of sale were made in this State.

Taxing statutes are presumptively constitutional. (*King* v. *Mullins*, 171 U. S. 404, 436.) The sections of the Tax Law of this State in question here are constitutional legislative enactments. (*Vaughan* v. *State*, 272 N. Y. 102.) It is only direct not incidental interference with the freedom of commerce that brings the case within the exclusive domain of Federal legislation. (*Field* v. *Barber Asphalt Paving Co.*, 194 U. S. 618, 623.)

The taxes were imposed, not on the property represented by the shares of stock nor on the shares, but on the privilege of sale or the agreement to sell the shares. (*People ex rel. Hatch* v. *Reardon*, 184 N. Y. 431; affd., 204 U. S. 152.)

That the interference with commerce must be direct and not incidental is well established. In *South Carolina State Highway Dept.* v. *Barnwell Bros., Inc.* (303 U. S. 177), it was held that it was within the power of a State to regulate the use of its highways, which regulations applied alike to vehicles moving within and without the State.

In *Cargill Co.* v. *Minnesota* (180 U. S. 452) it was held that in the exercise of its police power and its power to license occupations and businesses within its boundaries, a State may impose a license tax for transacting such business or occupation although the property may involve deliveries outside the State. In this case it was held that the fact that grain stored in an elevator is to be shipped out of the State does not make a statute requiring a license for conducting the business of such elevator in the State amount to a regulation of interstate commerce. In other words, when the property involved is subject to a property tax, the privilege of engaging in business concerning such property may be taxed. (*Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365.) In this case, where an annual license fee was imposed on a ferry company by the city of East St. Louis, the company having been chartered by

the State of Illinois and being domiciled in East St. Louis, its boats plying between that place and St. Louis, Mo., the court said (at p. 374): "The exaction of a license fee is an ordinary exercise of the police power by municipal corporations. When, therefore, a State expressly grants to an incorporated city, as in this case, the power 'to license, tax and regulate ferries,' the latter may impose a license tax on the keepers of ferries, although their boats ply between landings lying in two different States, and the act by which this exaction is authorized will not be held to be a regulation of commerce."

In the instant case the situs of the shares of stock was the city and State of New York and the shares were subject to a property tax. The State may require a license and the payment of a tax therefor from hawkers, peddlers, agents and other persons selling goods which are within the State at the time of sale, although such licensees bring their goods in from another State or buy from or act for non-resident manufacturers. (*Singer Sewing Machine Co.* v. *Brickell*, 233 U. S. 304.)

In *Western Live Stock* v. *Bureau of Revenue* (303 U. S. 250) it was said (at p. 253): "Nor is taxation of a local business or occupation which is separate and distinct from the transportation and intercourse which is interstate commerce forbidden merely because in the ordinary course such transportation or intercourse is induced or occasioned by the business."

In *Townsend* v. *Yeomans* (301 U. S. 441) it was held that interstate or foreign commerce is not unconstitutionally burdened by a State statute fixing maximum charges for handling and selling leaf tobacco although practically all the tobacco sold is shipped out of the State in interstate or foreign commerce. Such charges, it was held, are merely incidental to and impose no direct burden upon that commerce.

In *United States Fidelity & Guaranty Co.* v. *Kentucky* (231 U. S. 394) it was held that a non-discriminating license tax imposed on business carried on within the State is valid although it may incidentally affect or relate to interstate commerce.

In *New York ex rel. Penn. R. R. Co.* v. *Knight* (192 U. S. 21), where a franchise tax on the business of running cabs within the city of New York was being considered, it was held that the imposition of the tax had no contractual or necessary relation to interstate transportation, that it was preliminary thereto, independently contracted for, and not necessarily connected therewith. In that respect the cases cited in claimant's brief relating to stamp taxes on bills of lading are not in point, because bills of lading are always associated with shipments of articles of commerce.

In *Hopkins* v. *United States* (171 U. S. 578) it was held that the business of brokers is deemed to be transacted wholly within the State and they are not engaged in interstate commerce although they negotiate sales or transactions of interstate commerce.

The offer to purchase and memoranda of sale and the agreement to sell were made in New York city. The shares of stock were in New York city prior to the making of the agreement to sell and after such agreement was made. They were sent from and payment therefor was received in New York city. The tax in itself being a privilege tax did not involve transportation of the shares across the State boundary. Whether title passed until payment was received in New York city depends on the intention of the parties. (Pers. Prop. Law, § 99.) It is obvious that ownership was not transferred by the mere deposit of the securities with the banking company in Philadelphia and it is fairly obvious that the intention of the parties was that the transfer was not effective until payment was received. However that may be, as before pointed out, the agreement to sell and the memoranda of sale were made in this State preliminary to the sending of the certificates.

As to claimant's argument of additional taxation, it was said in *Western Live Stock* v. *Bureau of Revenue* (*supra*): " It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of tax burden even though it increases the cost of doing the business."

*Matter of Paul* (165 N. Y. Supp. 413) is not in point. There the transfer was made in Connecticut while the transferor and transferee were both temporarily residing in that State. It was held that in the absence of proof requiring that stamps be affixed to the transfer in Connecticut the common law applied and that the affixing of stamps was unnecessary.

The imposition of the taxes upon the transactions in this State was but an incidental interference, if any, with interstate commerce and the statutes are not unconstitutional nor were claimants deprived of property without due process of law. The claim must be dismissed.

RYAN, J., concurs.