LUDLUM STEEL COMPANY, Claimant, v. STATE OF NEW YORK, Defendant.

(Claim No. 24404.)

Court of Claims, January 15, 1943.

*Neile F. Towner* for claimant.

*John J. Bennett, Jr., Attorney-General* (*Joseph L. Delaney* of counsel), for defendant.

DYE, J.   This claim is for refund of moneys paid for stock transfer tax stamps affixed to certain securities in the amount

required by section 270 [and 270-a] of the Tax Law (Cons. Laws, ch. 60) as it existed in November, 1935. It is claimed that the statute is not applicable to the instant situation. The claimant made application for a refund to the State Tax Commission, which, after hearing, was denied, and now is in this court pursuant to section 280 of the Tax Law. The pertinent facts which had been agreed upon by stipulation of counsel briefly are as follows:

The Wallingford Steel Company is a Connecticut corporation with a principal place of business at Wallingford, Connecticut, and with no place of business in the State of New York. Between August 12, 1935, and October 22, 1935, stockholders of The Wallingford Steel Company owning 18,507 shares of stock of The Wallingford Steel Company gave the Ludlum Steel Co., a New Jersey corporation, a ninety-day option from August 12, 1935, to purchase this stock. Of these stockholders, stockholders owning 16,987 shares resided outside the State of New York and stockholders owning 1,520 shares resided in the State of New York. The options for said 16,987 shares belonging to the stockholders residing outside of the State of New York were in writing and were mailed outside of the State of New York addressed to the Ludlum Steel Co. of Watervliet, New York. On November 6th and 7th, 1935, the Ludlum Steel Co. mailed, either at the post office in the city of Albany or at a mail box under the care of the Albany post office, a written acceptance of said options addressed to each of said stockholders at their respective addresses outside of the State of New York, and requested said stockholders to mail to the Guaranty Trust Company of New York at 140 Broadway, New York, which trust company the Ludlum Steel Co. had appointed as its agent for the transaction, their certificates of stock properly endorsed for transfer and the Guaranty Trust Company would forward to each stockholder a check for the amount of the purchase price of his shares of stock. This arrangement was carried out and, between November 14 and December 7, 1935, the Guaranty Trust Company received certificates for 16,987 shares of stock properly endorsed, which had been mailed outside of the State of New York, and the Guaranty Trust Company mailed in the city of New York to said stockholders the purchase price for said stock. The Guaranty Trust Company thereupon forwarded said certificates of stock by mail to The Wallingford Steel Company at Wallingford, Connecticut, the Wallingford Steel Company having no transfer agent, and new certificates for the said stock were issued by the officers of The Wallingford Steel Company at the office of

the company, Wallingford, Connecticut. Practically all the new certificates for said stock issued to the Ludlum Steel Co. were actually delivered to a representative of the Ludlum Steel Co. at Wallingford, Connecticut, and a few were mailed from Wallingford, Connecticut, to the office of the Ludlum Steel Co. at Watervliet, N. Y. Between November 14 and December 7, 1935, the Guaranty Trust Company acting as agent for the Ludlum Steel Co. actually affixed to said certificates New York State stock transfer stamps at the rate of four cents per share on the 16,987 shares transferred as aforesaid, amounting to $679.48, having purchased said stamps from the State of New York, and the Ludlum Steel Co. actually paid the sum of $679.48 for said stamps. No claim is made for the stamps affixed to the 1,520 shares of stock belonging to residents of the State of New York.

We thus observe that these facts relate to a situation which appears to be the converse of the situation found by this court in the case of *O'Kane* v. *State of New York* (172 Misc. 829; affd., 283 N. Y. 439). There, the memoranda for the sale of stock were made in New York city and related to shares then in New York. Pursuant to the agreement, the shares endorsed for transfer were forwarded, draft attached, to designated collection banks in Washington, D. C., and Philadelphia. New certificates were subsequently issued by transfer agents outside of New York. The transaction was deemed taxable, and transfer tax stamps in the amount fixed by statute were directed to be attached to the sale memoranda, the decision being based on the proposition that the State was imposing a tax on the right to do business within its borders, which in no way violated the " due process " or interstate commerce clauses of the Constitution.

Do the facts in this case serve to distinguish it from the *O'Kane* case and excuse it from tax liability under section 270? We think not. The statute exempts certain transactions occurring outside the State which exemptions are applicable where " neither the sale, nor the agreement to sell, nor the memorandum of sale, nor the delivery is made in this State and no act necessary to effect the transfer * * * is done in this State."

Considerable was done by the parties within New York State in the instant case. *First,* the agreement was signed in Watervliet by the purchaser. This by itself might not be sufficient to incur tax liability, as in the event of default the remedy would have been for breach of the option agreement. But more was done than the mere acceptance of an option offer. The purchaser appointed the Guaranty Trust Company of New York

city as its agent to attend to the business of carrying out the terms of the option, and the out-of-State owners were directed to deliver their stock certificates to the Trust Company, and it was to pay over the agreed purchase price. The transmittal of certificates thereafter to Connecticut, for transfer on the books of the foreign corporation, was merely an administrative act which simply confirmed the beneficial transfer that had already taken place in New York, to accomplish which the facilities of the State of New York had been resorted to. As we have seen, it is the business privilege that is taxable, not the property represented by the shares nor the shares themselves, both by the language of the statute and the ruling of our highest appellate court. (*People ex rel. Hatch* v. *Reardon,* 184 N. Y. 431; affd., 204 U. S. 152.) Nor should the claimant complain. Its appointment and use of the Guaranty Trust Company as an agent was purely voluntary and certainly was prompted for its own convenience and protection. Having so acted, we must hold that it thus brought itself within the provisions of section 270 of the Tax Law and rendered itself liable to the tax therein levied.

The claim is dismissed upon the merits.

Let judgment be entered accordingly.

FITZSIMMONS, J., concurs.