## FISHER'S BLEND STATION, INC. *v.* STATE TAX COMMISSION ET AL.

No. 628.   Argued March 9, 1936.—Decided March 30, 1936.

*Messrs. Godfrey Goldmark* and *Donald G. Graham,* with whom *Messrs. R. J. Venables* and *James B. Howe* were on the brief, for appellant.

*Mr. E. P. Donnelly,* Assistant Attorney General of Washington, with whom *Mr. G. W. Hamilton,* Attorney General, was on the brief, for appellees.

. MR. JUSTICE STONE delivered the opinion of the Court.

This appeal from a judgment of the Supreme Court of the State of Washington, Judicial Code, § 237, presents the question whether a state occupation tax, measured by the gross receipts from radio broadcasting from stations within the state, is an unconstitutional burden on interstate commerce.

Appellant brought suit to enjoin appellees, the State Tax Commission, from collecting the tax, laid by § 2 of Chapter 191 of the Washington Laws of 1933, as an infringement of the commerce clause of the federal Constitution. On demurrer to the bill of complaint, and on stipulation of the parties that the cause might be decided upon the facts there alleged, the state Supreme Court gave final judgment for the appellees.

Appellant maintains, within the state, two broadcasting stations licensed by the Federal Radio Commission (now the Federal Communications Commission). One is licensed to operate with power and a radio frequency enabling it to broadcast throughout the "fifth zone," which comprises eleven western and northwestern states, including Washington, and the Territories of Alaska and Hawaii. The other is licensed to operate as a "clear channel" station, that is to say, a station to which the Commission has assigned a radio frequency to be used at such times and with such power as will enable it to broadcast throughout the United States without interference by

other stations. §§ 2, 4, 5, Federal Radio Act of 1927,[1] 44 Stat. 1162; Regulations, Federal Radio Commission, File No. 5–R–B–63 and Official No. 63; File No. 5–R–B–67 and Official No. 67, Nos. 70–75, No. 111, Nos. 116–124. These stations broadcast over the areas for which they are licensed, and the adjacent high seas and a part of Canada.

Broadcasting, according to the allegations of the complaint, is accomplished by the generation, at the broadcasting station, of electro-magnetic waves, which pass through space to receiving instruments which amplify them and translate them into audible sound waves. The essential elements in the broadcasting operation are a supply of electrical energy, a transmitter, the connecting medium or "ether" between the transmission and receiving instruments, and the receiving mechanism.

Appellant's entire income consists of payments to it by other broadcasting companies or by advertisers for broadcasting, from its Washington stations, advertising programs originating there or transmitted to them from other states by wire. Appellant "sells time" to its customers at stipulated rates, during which it broadcasts from its stations such advertising programs as may be agreed upon. During such time as is not sold, it broadcasts, at its own expense, "sustaining" programs, as required by the regulations of the Federal Radio Commission. The customers desire the broadcasts to reach the listening public in the areas which appellant serves, and a large number of persons, many of them in other states, listen to the broadcasts from appellant's stations.

The state Supreme Court recognized that state taxation of gross income derived from interstate commerce is forbidden by the commerce clause. But it upheld the tax on the ground that the business from which appel-

---

[1] This Act has been superseded by the Act of June 19, 1934, 48 Stat. 1081. 47 U. S. C. § 301ff.

lant receives its income is not interstate commerce. It conceded, as it had previously held, *Van Dusen* v. *Department of Labor and Industries,* 158 Wash. 414; 290 Pac. 803, that broadcasting is commerce, and that the broadcasting by appellant of its own programs for which it does not receive pay is interstate commerce. But it concluded that appellant's remunerative business. is not interstate commerce because it consists of furnishing, within the state, the facilities of its stations to customers who use them for broadcasting their programs, and the business of providing such facilities, like that of providing a bridge for the use of others in crossing state lines, is not commerce. See *Detroit International Bridge Co.* v. *Corporation Tax Appeal Board,* 294 U. S. 83; *Henderson Bridge Co.* v. *Kentucky,* 166 U. S. 510.

We may assume, although it is not alleged, that appellant's customers produce the sounds. which are broadcasted. But it sufficiently appears, although the complaint does not specifically so state, that appellant, and not the customer, generates the electric current and controls the apparatus (generator, transmitter and their controls) by which the sounds are broadcasted. The complaint states that appellant operates its stations and conducts the business of broadcasting in the manner already described, and that the license to operate them is granted to appellant by the Federal Radio Commission under the Federal Radio Act. These allegations, read in the light of the statute, which forbids any save licensees to operate broadcasting apparatus, § 1, Federal Radio Act of 1927, 44 Stat. 1162, and of the facts of which we have judicial knowledge, see *Buck* v. *Jewel-LaSalle Realty Co.,* 283 U. S. 191, 200; *DeForest Radio Co.* v. *General Electric Co.,* 283 U. S. 664, 670, *et seq.,* must be taken to state that the broadcasting of radio emanations, as distinguished from the production of the sounds broadcasted, is effected by appellant and not by its customers.

The sounds broadcasted are not transmitted from the microphone to the ears of listeners in other states. They do not pass as sound waves to the receiving mechanisms. They serve only to enable the broadcaster, by the use of appropriate apparatus, to modulate the radio emanations which he generates. These emanations as modulated, are projected through space to the receiving sets. There, by a reverse process, they so actuate the receiving mechanisms as to produce a new set of sound waves, of frequencies identical with those produced at the mircrophone. On the argument it was conceded that, in broadcasting for its customers, appellant, by generating the necessary electric power and controlling the transmitter, produces the radio emanations which actuate the receiving mechanisms located in other states. Upon the facts alleged, we see no more basis for saying that appellant's customers do the broadcasting than for saying that a patron of a railroad or a telephone company alone conducts the commerce involved in his railroad journey or telephone conversation.

Appellant is thus engaged in the business of transmitting advertising programs from its stations in Washington to those persons in other states who "listen in" through the use of receiving sets. In all essentials its procedure does not differ from that employed in sending telegraph or telephone messages across state lines, which is interstate commerce. *Western Union Telegraph Co.* v. *Speight,* 254 U. S. 17; *New Jersey Bell Tel. Co.* v. *State Board of Taxes,* 280 U. S. 338; *Cooney* v. *Mountain States Tel. & Tel. Co.,* 294 U. S. 384; *Pacific Tel. & Tel. Co.* v. *Washington; ante,* p. 403. In each, transmission is effected by means of energy manifestations produced at the point of reception in one state which are generated and controlled at the sending point in another. Whether the transmission is effected by the aid of wires, or through a perhaps less well understood medium,

"the ether," is immaterial, in the light of those practical considerations which have dictated the conclusion that the transmission of information interstate is a form of "intercourse," which is commerce. See *Gibbons* v. *Ogden*, 9 Wheat. 1, 189.

Similarly, we perceive no basis for the distinction urged by appellee, that appellant does not own or control the receiving mechanisms. The communications broadcasted are no less complete and effective, nor any the less effected by appellant, because it does not own or command the apparatus by which they are received. The essential purpose and indispensible effect of all broadcasting is the transmission of intelligence from the broadcasting station to distant listeners. It is that for which the customer pays. By its very nature broadcasting transcends state lines and is national in its scope and importance—characteristics which bring it within the purpose and protection, and subject it to the control, of the commerce clause. See *Federal Radio Comm'n* v. *Nelson Bond & Mortgage Co.*, 289 U. S. 266, 279.

It is unnecessary to determine whether, as the court below suggested and appellee argues, like considerations would require us to hold that the exposure of a sign board, in one state, to the view of dwellers in another, is likewise interstate commerce. Whether the practical and scientific aspects of such an operation bring it within the range of those factors which we deem controlling here, may well be left for decision when such a case is presented. See *Pantomimic Corporation* v. *Malone*, 238 Fed. 135.

As appellant's income is derived from interstate commerce, the tax, measured by appellant's gross income, is of a type which has long been held to be an unconstitutional burden on interstate commerce, *Philadelphia & Southern S. S. Co.* v. *Pennsylvania*, 122 U. S. 326; *Leloup* v. *Port of Mobile*, 127 U. S. 640; *Galveston, H. & S. A.*

*Ry. Co.* v. *Texas,* 210 U. S. 217; *Crew-Levick Co.* v. *Pennsylvania,* 245 U. S. 292. But appellee further contends, as the state court thought, that, even though broadcasting involves interstate commerce, the maintenance and operation of appellant's stations includes intrastate activities which may be subjected to state taxation, as was the generation of electricity, transmitted to points outside the state, in *Utah Power & Light Co.* v. *Pfost,* 286 U. S. 165. There the tax was measured by the amount of current generated at the taxpayer's hydro-electric plant, from which electric power was supplied to consumers in other states. This Court held that the operation of generating electrical power, although virtually simultaneous with its transmission, is so distinct and separable from the operation of transmission, in interstate commerce, as to be the appropriate subject of a state tax. The argument now made overlooks the fact that the present tax is not levied upon or measured by appellant's generation of electro-magnetic waves, but by its gross receipts for the service it performs, which includes both the generation of the energy and its transmission as a means of communication interstate.

Whether the state could tax the generation of such energy, or other local activity of appellant, as distinguished from the gross income derived from its business, it is unnecessary to decide. See *Atlanta* v. *Oglethorpe University,* 178 Ga. 379; 173 S. E. 110. It is enough that the present is not such a tax, but is levied on gross receipts from appellant's entire operations, which include interstate commerce. As it does not appear that any of the taxed income is allocable to intrastate commerce, the tax as a whole must fail, *Cooney* v. *Mountain States Tel. & Tel. Co., supra;* cf. *Pacific Tel. & Tel. Co.* v. *Washington, supra,* and the judgment of the state court must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Reversed.*