DEPARTMENT OF TREASURY OF INDIANA *v*. SOUTH BEND TRIBUNE

[No. 27,234. Filed December 22, 1939.]

*Omer S. Jackson,* Attorney General, *Joseph W. Hutch-inson,* and *Joseph P. McNamara,* Deputy Attorneys General, for appellant.

*Aaron H. Huguenard,* and (*Wray Fleming,* amicus curiae), for appellee.

ROLL, J.—This action was instituted by appellee under the provisions granted by section 14 (a) of chapter 117

of the Acts of 1937, and seeks the recovery of six hundred thirty-eight dollars and sixty-five cents ($638.65) previously paid to appellant as gross income taxes.

It is alleged in the complaint that the amount sought to be recovered was paid as gross income taxes upon gross income derived from the payments made to appellee by advertisers pursuant to contract entered into between the appellee and its advertisers.

Appellee is an Indiana corporation with its principal place of business at South Bend, Indiana, and is engaged in the business of printing and publishing a newspaper known as "The South Bend Tribune." During the years in question (1934, 1935, 1936), said newspaper had an average daily circulation in excess of 37,000 copies among subscribers and purchasers. One-eighth of said circulation was among subscribers and to purchasers of said newspaper residing in states other than the state of Indiana. The major part of its "out of state" circulation was in the state of Michigan. (South Bend is only about twelve miles south of the Michigan-Indiana line.)

Appellee's revenue was from two sources, (1) from the sale of the newspaper to subscribers and purchasers, and (2) from advertisers who purchased space in said newspaper. That part of appellee's gross income derived from the sale of its newspaper is not here in question.

Appellee paid gross income tax on all income derived from the sale of advertising space. It now seeks to recover one-eighth of such gross income tax because one-eighth of the circulation of its newspaper was in states other than Indiana, and therefore it argues that one-eighth of its gross income was derived from interstate commerce, and such a tax is in violation of the

provisions of clause 3, section 8, of Article 1 of the Constitution of the United States.

The validity of the gross income tax law of Indiana (chapter 117, Acts 1937) is not questioned.

If the income received by appellee from contracts between itself and advertisers for the insertion of advertising matter in appellee's newspaper was not income from interstate business, it would follow that appellee, under its complaint, should not recover in this action.

In case of *Blumenstock Bros.* v. *Curtis Pub. Co.*, 252 U. S. 436, the court discussed this question. In that case Blumenstock Bros. sought to recover treble damages from the Curtis Publishing Co. under the provisions of section 7 of the Sherman Anti-Trust Act. It appeared that Blumenstock Bros. operated an advertising agency and sought to contract for advertising space for their clients in the Saturday Evening Post, printed and published by the Curtis Publishing Company. It was asserted that the defendant refused to accept advertising from the plaintiff except on the condition that the publishing company would be given the right to designate the amount of advertising space plaintiff's clients could purchase in other publications, and for that reason plaintiff complained that the Curtis Publishing Company was attempting to acquire a monopoly of the publication and distribution of advertising matter in this restricted field throughout the United States.

The decision of the Supreme Court in dismissing the appeal was predicated upon the question as to whether the making of contracts for the insertion of advertising matter in a periodical or other publications, which circulate interstate between citizens of different states, constitute interstate commerce. If it did not, no federal

question was presented, and the cause was rightfully dismissed by the district court.

The court said:

"In the present case, treating the allegations of the complaint as true, the subject matter dealt with was the making of contracts for the insertion of advertising matter in certain periodicals belonging to the defendant. It may be conceded that the circulation and distribution of such publications throughout the country would amount to interstate commerce, but the circulation of these periodicals did not depend upon or have any direct relation to the advertising contracts which the plaintiff offered and the defendant refused to receive except upon the terms stated in the declaration. The advertising contracts did not involve any movement of goods or merchandise in interstate commerce, or any transmission of intelligence in such commerce."

The court there reviews certain cases and concludes as follows:

"Applying the principles of these cases, it is abundantly established that there is no ground for claiming that the transactions which are the basis of the present suit, concerning advertising in journals to be subsequently distributed in interstate commerce, are contracts which directly affect such commerce. Their incidental relation thereto cannot lay the groundwork for such contentions as are undertaken to be here maintained under § 7 of the Sherman Anti-Trust Act. The court was right in dismissing the suit."

If the making of contracts for the printing and publishing of advertisements in a newspaper or magazine that circulates interstate does not involve interstate commerce, within the meaning of the commerce clause of the Federal constitution, it would seem logical to hold that income derived from such contracts would likewise be free from the provisions of said constitutional provisions.

But assuming that the question here involves the question of interstate commerce, we are of the opinion that appellee should not recover under the law as laid down in the late case of *Western Live Stock* v. *Bureau of Revenue* (1938), 303 U. S. 250, 58 Sup. Ct. 546.

In this case the facts are identical with the case at Bar. The facts and the contention of the parties are very clearly stated in the opinion as follows:

"Appellants publish a monthly livestock trade journal which they wholly prepare, edit and publish within the state of New Mexico, where their only office and place of business is located. The journal has a circulation in New Mexico and other states, being distributed to paid subscribers through the mails or by other means of transportation. It carries advertisements, some of which are obtained from advertisers in other states through appellants' solicitation there. Where such contracts are entered into, payment is made by remittances to appellants sent interstate; and the contracts contemplate and provide for the interstate shipment by the advertisers to appellants of advertising cuts, mats, information, and copy. Payment is due after the printing of such advertisements in the journal and its ultimate circulation and distribution, which is alleged to be in New Mexico and other states.

"Appellants insist here, as they did in the state courts, that the sums earned under the advertising contracts are immune from the tax because the contracts are entered into by transactions across state lines and result in the like transmission of advertising materials by advertisers to appellants and also because performance involves the mailing or other distribution of appellants' magazines to points without the state."

The court points out and supports its position with convincing authority, that the mere formation of a contract between persons in different states is not within

the protection of the commerce clause of the Federal constitution, in the absence of congressional legislation.

Appellee does not argue the contrary here, but contends that the performance of the contract, to-wit, the publishing and circulating of its newspaper, both intrastate and interstate, does involve interstate commerce, and for that reason, that part of its income derived from such interstate transaction comes within the protection of the commerce clause, and the state of Indiana is without authority to impose the tax here in question. The same contention was made in the Western Livestock case, *supra.*

It has been held that the taxation of a local business or occupation, which is separate and distinct from the transportation and intercourse of an interstate character is not within the protection of the commerce clause, merely because in the ordinary course such interstate transaction is induced or occasioned by the business. *Williams* v. *Fears,* 179 U. S. 270, 21 S. Ct. 128, 45 L. Ed. 186; *Blumenstock Bros.* v. *Curtis Pub. Co., supra; Western Livestock* v. *Bureau of Revenue, supra,* and cases there cited.

As stated above, appellee contends that the tax here imposed is invalid and in violation of the commerce clause of the Federal constitution, because the performance of the contracts with its advertising customers for which compensation was received, involves to some extent (12½%), the distribution interstate, of some copies of its newspaper containing the advertisements.

This exact question was presented in the Western Livestock case, *supra,* and was stated by the court as follows:

"We lay to one side the fact that appellants do not allege specifically that the contract stipulates

"that the advertisements shall be sent to subscribers outside the state, or is so framed that the compensation would not be earned if subscribers outside the state should cancel their subscriptions. We assume the point in appellants' favor and address ourselves to their argument that the present tax infringes the commerce clause because it is measured by gross receipts which are to some extent augmented by appellants' maintenance of an interstate circulation of their magazine."

The court in answering the above question pointed out that it was not the purpose of the commerce clause of the constitution to relieve those engaged in interstate commerce from their just share of state tax burden, even though it increases the cost of doing business. It is not every burden on interstate commerce that is forbidden. "Even interstate business must pay its way." *Postal Telegraph Cable Co.* v. *Richmond,* 249 U. S. 252; *Ficklen v. Shelby County Taxing Dist.,* 145 U. S. 1. The fact alone that one is carrying on business interstate, does not relieve him from many forms of state taxes. *Western Union Tel. Co.* v. *Attorney General,* 125 U. S. 530; *Old Dominion S. S. Co.* v. *Virginia,* 198 U. S. 299, and cases there cited.

The one outstanding condition necessary to the validity of such taxes is that the tax be fairly apportioned to its use. *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450. In this case no contention is made by appellee of the unfair apportionment of the tax imposed. Many cases are cited by appellee, and others might be cited, where local taxes, measured by gross receipts from interstate commerce, have been held unconstitutional. But, as pointed out by the Supreme Court in the Western Livestock case, *supra,* that the vice characteristic of those which have been held invalid is that they have place on the commerce burdens of such a nature as to be capable, in point of substance, of

being imposed with equal right by every state which the commerce touches, merely because interstate commerce is being done, so that without the protection of the commerce clause it would bear cumulative burdens not imposed on local business. *Fargo* v. *Michigan,* 121 U. S. 230; *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292; *Fisher's Blend Station* v. *State Tax Commission,* 297 U. S. 650; *J. D. Adams Mfg. Co.* v. *Storen,* 304 U. S. 307. (The last two cited cases are relied upon heavily by appellee.)

The court in the Western Livestock case, after reviewing many authorities on the power of the state to impose tax burdens on interstate commerce, turns to the validity of the tax involved, and said:

> "But there is an added reason why we think the tax is not subject to the objection which has been leveled at taxes laid upon gross receipts derived from interstate communication or transportation of goods. So far as the value contributed to appellants' New Mexico business by circulation of the magazine interstate is taxed, it cannot again be taxed elsewhere any more than the value of railroad property taxed locally. The tax is not one which in form or substance can be repeated by other states in such manner as to lay an added burden on the interstate distribution of the magazine. As already noted, receipts from subscriptions are not included in the measure of the tax. It is not measured by the extent of the circulation of the magazine interstate. All the events upon which the tax is conditioned— the preparation, printing and publication of the advertising matter, and the receipt of the sums paid for it—occur in New Mexico and not elsewhere. All are beyond any control and taxing power which, without the commerce clause, those states could exert through its dominion over the distribution of the magazine or its subscribers. The dangers which may ensue from the imposition of a tax measured by gross receipts derived directly from interstate commerce are absent.

"In this and other ways the case differs from *Fisher's Blend Station* v. *State Tax Comm., supra,* on which appellants rely. There the exaction was a privilege tax laid upon the occupation of broadcasting, which the Court held was itself interstate communication, comparable to that carried on by the telegraph and the telephone, and was measured by the gross receipts derived from that commerce. If broadcasting could be taxed, so also could reception. *Station WBT, Inc.* v. *Poulnot,* 46 F. (2d) 671. In that event a cumulative tax burden would be imposed on interstate communication such as might ensue if gross receipts from interstate transportation could be taxed. This was the vice of the tax of a percentage of the gross receipts from goods sold by a wholesaler in interstate commerce, held invalid in *Crew Levick Co.* v. *Pennsylvania, supra.* In form and in substance the tax was thought not to be one for the privilege of doing a local business separable from interstate commerce. Cf. *American Manufacturing Co.* v. *St. Louis, supra.* In none of these respects is the present tax objectionable."

So in the case at Bar, the tax here imposed is not one which in form or substance can be repeated by other states in such a manner as to lay an added burden on the interstate distribution of appellee's newspaper. This, we think is one of the distinguishing features of the J. D. Adams Mfg. case as well as the Fisher's Blend Station case, *supra.* In the Western Livestock case, the defendant argued that the Fisher's Blend Station was decisive of the question in their favor. But the court very clearly distinguishes the Fisher's Blend Station case and other similar cases, and holds that they are not applicable to the facts presented. The Adams Mfg. case cited and relied upon by appellee might be placed in the same list as the Fisher's Blend Station case and distinguished on the same ground. It might also be pointed out that in the J. D. Adams Mfg. Co. case, that there was no question about the interstate character of the articles manufactured being shipped

in interstate commerce, and the court pointed out that the tax might be imposed by other states which the commerce touched. So, upon the authority of the *Western Livestock* v. *Bureau, supra,* which seems to be the last expression of the Supreme Court on this question, and the other cases herein cited, we hold: (1) that the gross income, the tax upon which is herein sought to be recovered, was not received from interstate commerce, within the meaning of the clause 3 of section 8 of Article 1 of the Constitution of the United States; and (2) that even if it be receipts from interstate commerce, the tax imposed by chapter 117 of the Acts of 1937 does not impose an unconstitutional burden upon appellee, and it should not recover in this action.

Judgment reversed with instructions to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.