Herbert, J.
As stated by the appellant, ‘ ‘ the essential question presented in this appeal * * * involves the determination of whether the Constitution of the United States prohibits taxation of incidents of interstate commerce; whether the Ohio use tax on equipment used in interstate commerce unduly burdens such commerce; and whether the tax can properly be levied upon any use in Ohio or is limited only to the ‘ principal and primary use.’ ”
Appellee states the issues as follows:
“Since admittedly the use of equipment in the stream of interstate commerce is an exempt use under the Ohio statute and the Constitution of the United States, the issues in this case can be summarized very simply thus:
“1. Does the Ohio statute tax, Section 5741.02, Revised Code, the momentary use (installation) of equipment which was purchased for an exempt use and which is used principally and primarily in an exempt activity?
“2. Does a tax on the momentary use (installation) of equipment purchased for and used principally and primarily in interstate commerce place an unconstitutional burden on such commerce in violation of the commerce clause of the United States Constitution?”
Unfortunately, neither statement can be accepted as a complete and accurate recital of the problem which confronts the *129 court. Also, the appellant does not concede the premise on which the appellee bases its version of the two issues numbered above, namely, that the use of the equipment in the stream of interstate commerce is an exempt use under the Ohio statute and the Constitution of the United States. It would appear that the Court of Appeals accepted this premise as one of its conclusions in its journal entry.
Section 5741.02, Revised Code, provides in part:
“ (A) For the use of the general revenue fund of the state, an excise tax is hereby levied on the storage, use, or other consumption in this state of tangible personal property purchased for storage, use, or other consumption in this state * * *\
( i * * *
“ (B) Each consumer, storing, using, or otherwise consuming in this state tangible personal property purchased for such purpose, shall be liable for the tax, and such liability shall not be extinguished until the tax has been paid to this state * * *.
“(C) The tax does not apply to the storage, use, or consumption in this state of- the following described tangible personal property, nor to the storage, use, or consumption in this state of tangible personal property purchased under the following described circumstances:
Í 6 # # #
“3. Property, the storage, use, or other consumption of which this state is prohibited from taxing by the Constitution of the United States, laws of the United States, or the Constitution of this state. This exemption shall not exempt from the application of the tax imposed by this section the storage, use, or consumption of tangible personal property which was purchased in interstate commerce, but which has come to rest in this state * *
These are the pertinent portions of the use-tax law with which we are concerned here. It is apparent that there is no specific exemption in the statute which applies to the property of a radio or television station. The appellee contends that the second sentence of paragraph three quoted above is not reached in construing the use-tax statute with reference to appellee’s property, apparently under the theory that the provisions of the first sentence prohibit the state from taxing such property.
Appellant insists that the second sentence is a limitation *130 upon the application of the first sentence and is applicable to show a legislative intention that the property of the appellee shall not be exempt from the use tax unless the levy thereon is prohibited because of constitutional limitation.
Therefore, the issue before us is resolved down to the question as to whether the use tax here places an unconstitutional burden on interstate commerce in violation of the commerce clause of the Constitution of the United States.
Admittedly, the broadcasting of radio and television programs is interstate commerce. Fisher’s Blend Station, Inc., v. State Tax Comm., 297 U. S., 650, 80 L. Ed., 956, 56 S. Ct., 608; Federal Radio Comm. v. Nelson Bros. Bond & Mortgage Co., 289 U. S., 266, at 279, 77 L. Ed., 1166, 53 S. Ct., 627, 89 A. L. R., 406.
The tax involved in the Fisher’s Blend Station case, however, was not a tax on property but rather on the gross receipts of the broadcasting station, so it is not pertinent to this situation. Nor does the case of Whitehurst v. Grimes, Chief of Police, 21 F. (2d), 787, cited by appellee, shed any light on the problem here.
The question of when a tax becomes a burden on interstate commerce has been considered by the Supreme Court of the United States in a number of cases.
In McGoldrick, Comptroller, v. Berwind-White Coal Mining Co., 309 U. S., 33, 84 L. Ed., 565, 60 S. Ct., 388, 128 A. L. R., 876, Mr. Justice. Stone, who delivered the opinion of the court, stated (at page 46):
“Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states, and there are many forms of tax whose burdens, when distributed through the play of economic forces, affect interstate commerce, which nevertheless fall short of the regulation of the commerce which the Constitution leaves to Congress. * * * Nondiscriminatory taxation of the instrumentalities of interstate commerce is not prohibited. The like taxation of property, shipped interstate, before its movement begins, or after it ends, is not a forbidden regulation.”
See, also, the opinion of Mr. Justice Reed in the case of Joseph, Comptroller, v. Carter & Weekes Stevedoring Co., 330 U. S., 422, at page 429, 91 L. Ed., 993, 67 S. Ct., 815.
*131 Each of the cases of Southern Pacific Co., v. Gallagher, 306 U. S., 167, 83 L. Ed., 586, 59 S. Ct., 389, and Pacific Telephone & Telegraph Co. v. Gallagher, 306 U. S., 182, 83 L. Ed., 595, 59 S. Ct., 396, involved a tax on use and storage as applied to supplies purchased outside a state and brought in for prompt application in the operation of a public utility. The use tax in question there is similar to that here and is described in the opinion in the Southern Pacific case as follows (page 171):
“The Use Tax Act is complemental to the California Retail Sales Tax Act of 1933. The latter levies a tax upon the gross receipts of California retailers from sales of tangible personal property; the former imposes an excise on the consumer at the same rate for the storage, use or other consumption in the state of such property when purchased from any retailer. As property covered by the sales tax is exempt under the use tax, all tangible personalty sold or utilized in California is taxed once for the support of the state government. Definitions in the Use Tax Act of taxpayer, retailer, storage and use are designed to make the coverage complete. A retailer is ‘every person, engaged in the business of making sales for storage, use or other consumption, ’; use is the exercise of any right or power incident to ownership, except sale in the regular course of business; storage is any ‘keeping or retention’ with a similar exemption; and a taxpayer includes everyone ‘storing, using or otherwise consuming’ the property subject to the use tax.”
It is interesting to note that the property involved in the two California cases would have been exempted from tax under the Ohio use-tax law because of the specific provision in Section 5741.01, Revised Code, that “when the purpose of the consumer is * * * to use or consume the thing transferred * * * directly in the rendition of a public utility service” such property is tax exempt. It is not claimed here, however, that the appellee is rendering a public utility service within Ohio statutory definitions.
Appellant asks the question, “whether the tax can properly be levied upon any use in Ohio or is limited only to the ‘principal and primary use.’ ”
Appellee contends that the “principal and primary use” by it of the property taxed should be determined to be in the maintenance and operation of the radio station in interstate commerce *132 and therefore should be tax exempt, as otherwise the imposition of such a tax would be a burden on such interstate commerce.
In the case of Southern Pacific Co. v. Gallagher, supra, it is stated:
“The validity of any application of a taxing act depends upon a classification of the facts in the light of these theories. In the present case some of the articles were ordered out of the state under specification suitable only for utilization in the transportation facilities and installed immediately on arrival at the California destination. If articles so handled are deemed to have reached the end of their interstate transit upon ‘use or storage, ’ no further inquiry is necessary as to the rest of the articles which are subjected to a retention, by comparison, farther removed from interstate commerce. We think there was a taxable moment when the former had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use —retention and exercise of a right of ownership, respectively— was effective. The interstate movement was complete. The interstate consumption had not begun.”
There is no dispute that the items taxed were delivered to the appellee at Bridgeport, Ohio, from Camden, New Jersey, and at the various times of arrival such property had come to rest in Ohio, the interstate movements having been completed. In fairness to the appellee, it does not even contend here for exemption from use tax because of the interstate nature of the initial delivery of these items at Bridgeport. It is also undisputed that shortly after delivery of these items they were all installed in the transmitter at the station.
In the imposition of the use tax here we see no need of drawing a fine distinction between the basis of temporary storage of the items followed by relatively immediate installation and the basis as contended for by appellee of the “principal and primary use” of operating the transmitter in interstate commerce.
In the Pacific Telephone & Telegraph case, the court stated (page 187):
“The appellant exercises two rights of ownership in California — retention and installation — after the termination of the *133 interstate shipment and before the nse or consumption on its mixed interstate and intrastate telephone system. We see no material distinction between the contentions of the appellant and those disposed of in Southern Pacific Co. v. Gallagher, ante. ’ ’
In those two cases the United States Supreme Court clearly recognized the right of the state to tax items such as those here under consideration at the moment of completion of interstate shipment into the state and the retention and installation. However the subsequent use of the equipment in interstate commerce such as the appellee contends to be the “principal and primary use” of the items here under consideration is disposed of further in the opinion in the Southern Pacific case, supra, in the following language (page 177):
“ ‘Practical continuity’ does not always make an áct a part of interstate commerce. This conclusion does not give preponderance to the language of the state act over its effect on commerce. State taxes upon national commerce or its incidents do not depend for their validity upon a choice of words but upon the choice of the thing taxed. It is true, the increased cost to the interstate operator from a tax on installation is the same as from a tax on consumption or operation. This is not significant. The prohibited burden upon commerce between the states is created by state interference with that commerce, a matter distinct from the expense of doing business. A discrimination against it, or a tax on its operations as such, is an interference. A tax on property or upon a taxable event in the state, apart from operation, does not interfere. This is a practical adjustment of the right of the state to revenue from the instrumentalities of commerce and the obligation of the state to leave the regulation of interstate and foreign commerce to the Congress.”
By the foregoing test we are led to the conclusion that there is no interference by the state of Ohio with interstate commerce under the circumstances presented in this case. The use tax imposed on the personal property of the appellee here is imposed in every instance where a person in Ohio uses goods purchased at retail outside Ohio and brought into this state for use here, excepting of course the specified statutory exemptions. Certainly, real estate in Ohio is not tax exempt solely because it may be used in interstate commerce.
*134 The use tax is not applied on the basis of residence or non-residence of the taxpayer but rather upon the sole test of use in Ohio and is applicable to the use of personal property in Ohio regardless of whether it is used in interstate or intrastate commerce, assuming, of course, that it is not otherwise exempt.
None of the three cases of Erie Railroad Co. v. Peck, Tax Commr., 160 Ohio St., 322, 116 N. E. (2d), 304; Mead Corp. v. Glander, Tax Commr., 153 Ohio St., 539, 93 N. E. (2d), 19; and Rochez Bros., Inc., v. Bowers, Tax Commr., 166 Ohio St., 396, 143 N. E. (2d), 123, relied upon by appellee is pertinent here, inasmuch as each of those cases ivas determined solely upon a construction of the words of the Ohio use-tax statute, and none involved a question of burden on interstate commerce.
In the recent six to three decision of the United States Supreme Court in the cases of Northwestern States Portland Cement Co. v. State of Minnesota, and Williams, State Revenue Commr., v. Stockham Valves & Fittings, Inc. (decided February 24, 1959), 3 L. Ed. (2d), 421, income tax laws of two states, Minnesota and Georgia, were held valid which levied taxes “on that portion of a foreign corporation’s net income earned from and fairly apportioned to business activities within the taxing state when those activities are exclusively in furtherance of interstate commerce.”
That decision is a departure from the former rigid rule as applied to state taxation of net income of corporations received in interstate commerce, and it is of interest here not so much to indicate the impartiality of the Ohio use tax as to all corporations, foreign or domestic, Avhether engaged in interstate or intrastate commerce (except for exempted uses specified therein), but as indicating an attitude on the part of the highest court to refrain from interfering with the states in their, reasonable 'efforts to secure tax revenues for themselves with respect to businesses engaged in interstate commerce.
We conclude, therefore, that transmitting equipment purchased in interstate commerce and shipped from a point outside this state to a point within this state, for immediate installation in a radio and television transmitter under construction in this state, and installed therein within a few days after arrival for principal use thereafter in interstate broadcasts from such *135 radio and television transmitter is subject to the use tax levied by Section 5741.02, Revised Code. This section does not violate clause 3, Section 8, Article I of the Constitution of the United States, providing that the Congress shall have the power “to regulate commerce with foreign nations and among the several states, ’ ’ for the reason that such tax is imposed on all property purchased for storage, use, or consumption in this state at a time when such property has come to rest within this state and is a nondiscriminatory tax which, when applied to the instrumentalities of interstate commerce, does not constitute a prohibited burden upon such commerce.
The judgment of the Court of Appeals is, accordingly, reversed and final judgment rendered for the Tax Commissioner.

Judgment reversed.

Weyoandt, C. J., Zimmerman, Taft, Matthias and Bell, JJ., concur.