295 So.2d 433 (1974)
Arny RHODEN, Commissioner and Chairman State Tax Commission, Defendant-Appellant,
v.
GOODLING ENTERPRISES, INC., Complainant-Appellee.
No. 47520.
Supreme Court of Mississippi.
June 4, 1974.
Taylor Carlisle, James H. Haddock, Joe D. Gallaspy, Wilson E. Hodge, Jackson, for defendant-appellant.
Deen, Cameron, Prichard & Young, Meridian, for complainant-appellee.
PATTERSON, Justice:
This suit arises from the Chancery Court of Lauderdale County wherein Goodling Enterprises, Inc., obtained a decree for recovery of taxes, interest and damages paid under protest to the State Tax Commission. Aggrieved, the tax commission appeals.
Goodling Enterprises, Inc., a Delaware corporation authorized to do business in this state, operates a cable television system serving the Meridian Naval Air Station in Lauderdale County. The facilities include a 440-foot antenna tower with a concrete building at its base. The building houses various signal and amplifier equipment. A coaxial cable runs from this complex on the Meridian Naval Air Station to the Capehart housing area, an on-base naval personnel housing complex. Each of the 320 units of Capehart is wired for connection to the cable system.
Television signals emanating from stations in Mississippi and Alabama are received by the facilities of Goodling Enterprises and transmitted to subscribers on the naval base. To become a subscriber to the service it is necessary for an application to be filed with Goodling Enterprises, Inc. Upon acceptance by the appellee corporation the individual housing unit of the applicant *434 is connected to the system for a charge of $4.75 per month. This amount covers basic service, there being additional charges for extra outlets if desired. The amount charged the consumer does not include state sales tax.
The cable service permits subscribers to receive television signals which otherwise would be inaccessible due to the distance between the residences of the subscribers and the broadcasting stations. The signals received by the subscribers originate from television stations located in Mississippi and Alabama. Originally signals were received and retransmitted from several stations located in Birmingham and Mobile, Alabama. At that time the president of the appellee corporation estimated that 20% of the signals retransmitted to the subscribers originated in Alabama. This estimate, however, has been reduced since signals emanating from Birmingham have been eliminated. The estimate at time of trial was that 10% to 15% of the signals retransmitted to the subscribers within this state originated beyond its borders.
On December 29, 1971, Arny Rhoden, Commissioner and Chairman of the State Tax Commission, issued an assessment of sales taxes and damages against Goodling Enterprises, Inc., for $1720.34, covering unpaid sales taxes declared by the commissioner to be unpaid for the period August 1, 1968, to October 31, 1971. Upon receipt of this assessment Goodling applied to the Board of Review of the State Tax Commission for relief, but was unsuccessful in this endeavor.
The appellee corporation then filed a notice of appeal and application for hearing and correction to the State Tax Commission which affirmed the assessment. Goodling Enterprises, Inc., then paid, under protest, the $1720.34 taxes and damages assessed by the State Tax Commission.
On November 1, 1971, and continuing through May 31, 1972, the appellee filed, again under protest, sales tax returns and paid additional taxes of $420.59 to the time of the filing of its complaint in the Chancery Court of Lauderdale County.
The chancery court found that the appellee corporation was not liable for the taxes assessed and entered a judgment against the tax commission in the sum of $2500.80 which included the sales taxes, damages and interest to November 15, 1972, plus interest of 6% until the judgment was paid to the appellee.
The critical issue is whether Mississippi Code 1942 Annotated section 10111 (1956) [now Mississippi Code Annotated section 27-65-23 (1972)] imposes an unconstitutional burden on interstate commerce as applied from the facts of this case. Section 27-65-23 provides in part as follows:
Upon every person engaging or continuing in any of the following businesses or activities, there is hereby levied, assessed and shall be collected a tax equal to five per cent of the gross income of the business, except as otherwise provided:
* * * * * *
TV cable systems; ... .
The lower court, relying primarily on Fisher's Blend Station, Inc. v. Tax Commission of State of Washington, 297 U.S. 650, 56 S.Ct. 608, 80 L.Ed. 956 (1936), was of the opinion and found that since part of the signals emanated from out-of-state broadcasting stations, the assessment affected interstate commerce and therefore was improper and uncollectible. We reverse.
We acknowledge the interstate character of CATV systems [United States v. Southwestern Cable Co., 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968)], but nevertheless are of the opinion the tax in the present case was not unduly burdensome to interstate commerce and is not constitutionally prohibited.
The Fisher's Blend case held that a state occupation tax measured by the gross receipts *435 of radio broadcasting stations within a state licensed to broadcast, and broadcasting over an area embracing several states, was an unconstitutional burden upon interstate commerce. The rigidity of this rule was relaxed by the United States Supreme Court in Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1938). The Court there noted practical considerations and rejected the contention that a gross receipts tax levied on the sale of advertising space in a magazine circulated both within and without the state of New Mexico, was an unconstitutional burden on interstate commerce. It observed that multiplication of state taxes measured by the gross receipts on interstate transactions would spell the destruction of interstate commerce and renew trade barriers the commerce clause of the constitution sought to remove. The Court held, however, the characteristic vice of the gross receipts taxes which had theretofore been held unconstitutional, to be "that they have placed on commerce burdens of such a nature as to be capable in point of substance of being imposed ... with equal right by every state which the commerce touches, merely because interstate commerce is being done, so that without protection of the commerce clause it would bear cumulative burdens not imposed on local commerce."
The Court recognized that businesses engaged in interstate commerce should pay their own way and upheld a tax assessment based upon the gross receipts as long as it did not have the effect of placing an extra burden on interstate commerce not borne by intrastate commerce. The Court pointed out that the interstate commerce involved was not subject to the risk of repeated exactions of the same nature by other states, thus negating the likelihood of cumulative burdens of unconstitutional proportions.
In Interstate Oil Pipe Line Co. v. Stone, 337 U.S. 662, 69 S.Ct. 1264, 93 L.Ed. 1613 (1949), the United States Supreme Court applied the doctrine of Western Live Stock, supra, to a situation analogous to the present case. There a Delaware corporation was qualified to do business in Mississippi. It owned and operated pipelines used to transport oil from lease tanks in various oil fields of this state to loading racks adjacent to railroads located elsewhere in the state. Oil was pumped from these racks into railroad tank cars for shipment outside of the state. If tank cars were unavailable, the oil was stored near the loading racks, incurring on occasion delays of short duration. However, when the oil was delivered to the pipeline company at the tanks, it was accompanied by a shipping order from the producer or owner directing that the oil be transported to out-of-state destinations as there were no refineries in Mississippi.
The pipeline company shipped the oil by rail as the agent of the producer or owner. It was paid by the producer for the transportation of the oil from the gathering point to the loading rack as well as receiving payments for pumping the oil into the tank cars. The Chairman of the Mississippi State Tax Commission levied a tax against the pipeline company measured by the gross receipts for transporting oil from the lease tanks to the railroad loading platforms pursuant to statute, precipitating a legal controversy.
In reviewing the case the United States Supreme Court held that since all of the activities upon which the tax was imposed occurred in the state of Mississippi, the tax did not discriminate against interstate commerce in favor of competing intrastate commerce of similar character. Additionally, the Court held the very nature of the subject of the tax was such that no other state could repeat the tax and hence there was no probability of interstate commerce being smothered with cumulative burdens. The Court stated:
Since all the activities upon which the tax is imposed are carried on in Mississippi, there is no due process objection to the tax. The tax does not discriminate *436 against interstate commerce of like character. The nature of the subject of taxation makes apportionment unnecessary; there is no attempt to tax interstate activity carried on outside Mississippi's borders. No other state can repeat the tax. For these reasons the commerce clause does not invalidate this tax. (337 U.S. at 667-668, 69 S.Ct. at 1266-1267, 93 L.Ed. at 1620-1621)
In giving consideration to the nature of Goodling's present operation we are of the opinion that the vices sought to be eliminated by the commerce clause are nonexistent. As in Interstate Oil Pipe Line, supra, all of the income upon which the tax could be imposed is derived within this state. The character of the appellee's business is such that it is not subject to the danger of burdensome cumulative taxation by other states.
We are of the opinion that the assessment of sales taxes and damages against Goodling Enterprises, Inc., in the sums mentioned were in all things proper and that the lower court erred in applying the doctrine of Fisher's Blend to deny the tax.
Reversed and rendered.
GILLESPIE, C.J., and INZER, WALKER and BROOM, JJ., concur.