ANSWER IOWA, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE, Defendant-Appellee.

Fourth District   No. 4—86—0674

Opinion filed September 24, 1987.

Dwight H. O'Keefe III, of Ensel, Jones, Blanchard & LaBarre, of Springfield, and Richard C. Bauerle, of Johnson, Bauerle, Hester & Walter, of Ottumwa, Iowa, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Imelda R. Terrazino, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE GREEN delivered the opinion of the court:

The plaintiff, Answer Iowa, Inc., appeals a circuit court order entered September 9, 1986, which affirmed a decision of defendant Department of Revenue of the State of Illinois (Department), holding it liable for taxes under sections 1 and 2 of the Messages Tax Act (Act) (Ill. Rev. Stat. 1983, ch. 120, pars. 467.1, 467.2). (The above provisions of the Messages Tax Act were repealed effective August 1, 1985 (Pub. Act. 84—126, art. VI, secs. 22, 25 (84 Ill. Laws 1457)), and are no

longer in force. They were replaced by the Telecommunications Excise Tax Act (Ill. Rev. Stat. 1985, ch. 120, pars. 2001 through 2021).)

On December 22, 1980, the Department issued a notice of messages tax liability on the part of Answer Iowa for the period July 1977 through May 1980. The total amount claimed due was $33,731.15. Upon request of Answer Iowa a hearing concerning this tax assessment was held.

Randy Stemsrud, a revenue auditor, testified that he audited Answer Iowa's books in order to determine the company's messages tax liability. His basis for imposing messages tax liability on Answer Iowa was its leasing equipment to "Illinois customers," which those customers used in Illinois.

On cross-examination, Stemsrud stated, "[M]y audit taxes the gross receipts from Illinois customers that were renting pagers and mobile equipment." His criterion for determining whether payments by individual customers were subject to the messages tax was the customer's mailing address in Answer Iowa's sales journal. The tax was applied to transactions involving those customers who had Illinois billing addresses. Stemsrud made no determinations concerning where messages were transmitted or received, where customers utilized leased equipment, or whether any of the messages subjected to the messages tax were messages in interstate commerce. He gave no credit for any Iowa tax shown to have been collected and paid by Answer Iowa "on this same customer service."

John Lund, Answer Iowa's president, testified that the company provides telephone answering, radio paging, and mobile telephone services. The messages to all subscribers to Answer Iowa's paging service pass through the company's Davenport, Iowa, office. Answer Iowa has no way of knowing the origin of calls to subscribers to its paging service. The company's reliable service area is approximately 15 to 20 miles from its transmitter, which is located in Iowa. Any paging message received in Illinois by an Answer Iowa customer would have to travel across the Illinois-Iowa State line.

Most of the above is also true of Answer Iowa's mobile telephone service. All calls must pass through the company's Davenport, Iowa, office, and the company has no way of knowing the origin of calls, or the location of one of its mobile telephones when a customer initiates a call.

Answer Iowa paid a 3% Iowa service tax, which is similar to a sales tax, on all of the revenues upon which the Department imposed the messages tax.

The billing addresses listed in Answer Iowa's accounts receivable

do not identify the addresses where customers will be receiving service. It is not uncommon for Answer Iowa's customers to have billing addresses considerable distances from the area in which they receive Answer Iowa services. Answer Iowa is not licensed to do business in Illinois. All of its radios and pagers are issued to customers from the company's Davenport, Iowa, office.

On cross-examination by the hearing referee, Lund admitted that Answer Iowa has one transmitter in Illinois, but did not state that it was in use during the time that the revenues here at issue were received. (At oral argument, the parties appeared to agree that the Illinois transmitter was for the use of an Illinois subsidiary of Answer Iowa and was not in use during the relevant time period.) Lund further stated that Answer Iowa charges separately for the lease of pager boxes and for use of its system to forward messages to the pager boxes. He acknowledged that Answer Iowa has customers residing in Illinois who use its pager equipment.

Kenneth Rakers, an audit supervisor, stated that the Department was attempting to tax Answer Iowa's gross receipts from rental of its equipment, specifically pager boxes and "mobile equipment," to "customers in Illinois."

On cross-examination, Rakers testified it was his understanding that the messages tax was assessed on charges for pager leasing and "pager dispatch" services provided all Answer Iowa customers with Illinois billing addresses.

On re-cross-examination, Stemsrud testified that he computed the tax assessment at issue on the basis of both revenues from pager dispatch service, which represented fees for dispatching messages through Answer Iowa's radio system, and revenues from pager leasing, which represented rentals of pieces of tangible personal property.

In a decision filed March 13, 1984, the hearing referee stated that the Department did not establish through its audit or through testimony where the messages which it sought to tax originated, "whether from interstate or intrastate commerce, nor did the Department attempt to tax those messages." The referee held that instead, the assessment at issue related only to receipts from rentals or leasing of equipment in Illinois "used in connection with the transmission of messages which are subject to tax under the Messages Tax Act." For this reason, the referee found that the Department established a liability on the part of Answer Iowa under the Messages Tax Act and recommended that the tax assessment be upheld "on receipts from leasing equipment used in Illinois to transmit messages." On March 13, 1984, the Department issued a final assessment of messages tax against An-

swer Iowa in the amount of $49,471.46.

On April 13, 1984, Answer Iowa filed a complaint for administrative review of the above actions. The circuit court affirmed the Department's decision on September 9, 1986.

In support of its argument that the circuit court erred in affirming the Department's administrative decision, Answer Iowa asserts that the Department is attempting to impose the messages tax indiscriminately on all messages received or sent by Answer Iowa customers, regardless of whether they are interstate or intrastate messages. It states that under the facts of this case, it is impossible to determine which messages are interstate and which are intrastate, and observes that there is evidence that customers' billing addresses are not necessarily indicative of the location where service is delivered. Answer Iowa further contends the hearing referee's conclusion that the messages tax was only imposed on receipts from the leasing of equipment in Illinois is contrary to the manifest weight of the evidence and, rather, the evidence conclusively demonstrates that the tax was imposed on revenues from both the transmission of messages and equipment leasing.

Answer Iowa maintains that the tax assessment here at issue does not pass the muster of the supreme court's decision in *Illinois Bell Telephone Co. v. Allphin* (1982), 93 Ill. 2d 241, 443 N.E.2d 580. Its basis for this contention is the *Allphin* court's holding that Federal constitutional law, as it existed in 1945, establishes the limits of taxation under the Messages Tax Act. Answer Iowa asserts that as of 1945, it was impermissible to attempt to tax only the intrastate activities of a business engaged in both interstate and intrastate commerce by using an audit method designed to approximate amount of tax due solely on the business' intrastate revenues.

The Department contends that it has never attempted to impose the messages tax on revenues from interstate messages. It asserts that in the present case, it intended to tax only gross receipts from those messages involving a caller located in Illinois communicating with another individual in Illinois through use of Answer Iowa's facilities. It contends that in these instances, the mere fact that the message passed through Answer Iowa's Davenport, Iowa, office does not render it an interstate message. The Department contends that a contrary holding would permit all communications companies to avoid payment of State taxes on intrastate messages by rerouting them through a second State.

The Department also asserts that its method of determining what revenues Answer Iowa derived from Illinois intrastate business (as-

sessing taxes only on amounts charged customers with Illinois mailing addresses) is permissible where, as here, books and records are either nonexistent or insufficient to permit precise calculation of a tax liability. It contends that Answer Iowa has not shown that this method of assessing its tax liability is clearly arbitrary, erroneous, or unreasonable, that Answer Iowa has not suggested a better method of assessing the tax, and that Answer Iowa has not challenged the underlying calculations on which the tax assessment here at issue is based. Finally, the Department asserts that Answer Iowa's arguments concerning the statement in the hearing referee's decision that tax was being assessed only on equipment leasing and rentals are irrelevant to any issue which is dispositive of this appeal.

Section 2 of the Messages Tax Act provides in part:

"A tax is imposed upon persons engaged in the business of transmitting messages in this State at the rate of 5% of the gross receipts from such business ***. However, such tax is not imposed upon the privilege of engaging in any business in interstate commerce or otherwise to the extent to which such business may not, under the Constitution and statutes of the United States, be made the subject of taxation by this State." Ill. Rev. Stat. 1983, ch. 120, par. 467.2.

Section 1 of the same Act provides in part:

"The words, 'transmitting messages,' in addition to the usual and popular meaning, include the furnishing, for a consideration, of services or facilities (whether owned or leased), or both, to persons in connection with the transmission of messages where such persons do not, in turn, receive any consideration in connection therewith ***." Ill. Rev. Stat. 1983, ch. 120, par. 467.1.

The supreme court's decision in *Illinois Bell Telephone Co. v. Allphin* (1982), 93 Ill. 2d 241, 443 N.E.2d 580, establishes the framework within which the applicability of the Messages Tax Act to the transactions here at issue must be analyzed. As Answer Iowa points out, in *Allphin* the court held that the Department's power to impose taxes pursuant to the Act is limited to the scope of permissible State taxation of interstate business as of 1945, when the Act was adopted. Thus we must look to United States Supreme Court interpretations of the commerce clause prior to the 1945 enactment of the Messages Tax Act in order to determine whether the tax assessment here at issue was proper.

The two principal pre-1945 cases on which Answer Iowa relies in support of its argument that the taxes here at issue were improperly

assessed are *New Jersey Bell Telephone Co. v. State Board of Taxes & Assessments* (1930), 280 U.S. 338, 74 L. Ed. 463, 50 S. Ct. 111, and *Cooney v. Mountain States Telephone & Telegraph Co.* (1935), 294 U.S. 384, 79 L. Ed. 934, 55 S. Ct. 477. *New Jersey Bell* involved a tax imposed on all receipts of businesses holding franchises for use or occupancy of public streets. The tax was imposed on the portion of such a business' gross receipts which the length of its lines or mains in the streets bore to the length of its entire lines or mains. New Jersey Bell did not object to imposition of the tax on its receipts from intrastate service, but did object to its imposition on revenues from the company's interstate business. In discussing whether this tax was violative of the commerce clause, the court stated:

> "It is elementary that a state may tax property used to carry on interstate commerce. But, as the Constitution vests exclusively in the Congress power to regulate interstate and foreign commerce, a state may not tax, burden or interfere with such commerce or tax as such gross earnings derived therefrom or impose a license fee or other burden upon the occupation or the privilege of carrying on such commerce, whatever may be the instrumentalities or means employed to that end. *Pullman Co. v. Richardson* [(1923)], 261 U.S. 330, 338, 67 L. Ed. 682, 686, 43 S. Ct. 366 and cases cited; *Sprout v. South Bend* [(1928)], 277 U.S. 163, 171, 72 L. Ed. 2d 833, 48 S. Ct. 502." (*New Jersey Bell Telephone Co. v. State Board of Taxes & Assessments* (1930), 280 U.S. 338, 346, 74 L. Ed. 463, 467-68, 50 S. Ct. 111, 113.)

Because the tax at issue was not a property tax or a substitute for a property tax, and was instead a tax on gross receipts derived from interstate commerce, the court held it void.

At issue in *Cooney* was a tax imposed by Montana on all telephones in the State owned by telephone companies, except those owned by mutual or not-for-profit companies and those for which the monthly rate charged the customer did not exceed a certain amount. The court held that this was a privilege or occupation tax levied on instrumentalities available for interstate communications. The court further stated that the fact that a portion of a business is intrastate does not "justify a tax either upon the interstate business or upon the whole business without discrimination." (*Cooney v. Mountain States Telephone & Telegraph Co.* (1935), 294 U.S. 384, 392-93, 79 L. Ed. 934, 941, 55 S. Ct. 477, 481-82.) The court also stated:

> "Where the tax is exacted from one doing both an interstate and intrastate business, it must appear that it is imposed solely

on account of the latter; that the amount exacted is not increased because of the interstate business done; that one engaged exclusively in interstate commerce would not be subject to the tax; and that the one who is taxed could discontinue the intrastate business without also withdrawing from the interstate business. *Sprout v. South Bend* [(1928)], 277 U.S. 163, 171, 72 L. Ed. 833, 837, 48 S. Ct. 502; *East Ohio Gas Co. v. Tax Commission* [(1931)], 283 U.S. 465, 470, 75 L. Ed. 1171, 1174, 51 S. Ct. 499." (294 U.S. 384, 393, 79 L. Ed. 934, 942, 55 S. Ct. 477, 482.)

The court concluded that since the tax was indivisible and indiscriminate in its application, it was an impermissible burden on interstate commerce.

Also relevant to the issues presented by this case is the Supreme Court's decision in *Fisher's Blend Station, Inc. v. Tax Com.* (1936), 297 U.S. 650, 80 L. Ed. 956, 56 S. Ct. 608. There, the question was whether a radio station, the broadcasts of which could be heard in several States, was subject to a State occupation tax measured by its gross receipts. The court concluded that imposition of the tax violated the commerce clause. The basis for this holding was that the tax was measured by the station's gross income, which was derived from interstate commerce, and none of its gross income was apparently allocable to intrastate commerce. The court observed that "[b]y its very nature broadcasting transcends state line and is national in its scope and importance." 279 U.S. 650, 655, 80 L. Ed. 956, 960, 56 S. Ct. 608, 610.

■ The principal vice sought to be avoided by the commerce clause is, of course, the imposition of cumulative tax burdens on the same interstate transactions, which tend to accord a competitive advantage to entities located within the same State as the consumer, as opposed to entities located in other States supplying the same goods or services. (*Western Live Stock v. Bureau of Revenue* (1938), 303 U.S. 250, 82 L. Ed. 823, 58 S. Ct. 546; 115 A.L.R. 944 (1938); *Goldberg v. Johnson* (1987), 117 Ill. 2d 493, 501-02.) We conclude that the tax which the Department assessed against Answer Iowa represents a cumulative tax burden on interstate commerce and is thus violative of the commerce clause as it was interpreted in 1945.

■ At the administrative hearing, Lund, Answer Iowa's president, provided uncontradicted testimony that Answer Iowa pays a 3% Iowa service tax on all revenues on which the Department seeks to impose the 5% messages tax. He further testified that all messages handled by the company pass through its Davenport, Iowa, office. Thus, receipts for messages handled by Answer Iowa's Davenport,

Iowa, office involving only individuals located in Illinois are nevertheless derived from interstate commerce. If the tax assessment here at issue were valid, all messages between individuals located in Illinois handled by Answer Iowa would be subject to a total tax of 8%, while those handled by the Illinois office of another entity would be subject to a tax of only 5%. It follows that an entity carrying on the type of business in which Answer Iowa engages from an Illinois location would enjoy an advantage in competing for the business of persons in Illinois who primarily make calls to other numbers in Illinois, as compared to an Iowa entity competing for this same business. This is a classic example of the kind of cumulative tax burden on interstate commerce which the commerce clause was intended to prevent.

█ As for Answer Iowa's receipts from the leasing of pager and mobile telephone equipment, Lund testified that all of Answer Iowa's radios and pagers are issued to customers from the company's Davenport, Iowa, office. Furthermore, the only intrastate messages which can possibly be transmitted by this equipment are calls from one Iowa location to another Iowa location. Therefore, there are no Illinois intrastate communications which would provide a basis for taxation of this equipment by Illinois.

█ Even if calls between two individuals in Illinois which are handled by Answer Iowa could be considered Illinois intrastate communications, imposition of the messages tax on Answer Iowa's receipts from equipment leasing would nevertheless be violative of the commerce clause as it was interpreted in 1945. It is apparent that Answer Iowa could not remain a viable competitor in the field of telecommunications if it could not permit lessees of its equipment to utilize it for the transmission of messages to other Illinois locations while the user is located in Illinois. Thus Answer Iowa could not discontinue its intrastate business without also discontinuing its interstate business, and the Department's tax assessment fails the test prescribed by the *Cooney* court for taxation of one doing both an interstate and intrastate business.

█ Furthermore, taxation of receipts derived from the leasing of pagers and mobile telephone equipment is similar to imposition of a sales or use tax on such receipts. As of 1945, a sales tax could not be imposed where title to the goods passed in a State other than the one which sought to impose the tax, even if orders for the goods were accepted by traveling salesmen in the State which sought to tax the transaction. (*McLeod v. J. E. Dilworth Co.* (1944), 322 U.S. 327, 88 L. Ed. 1304, 64 S. Ct. 1023.) Here, delivery of the leased equipment in Iowa fulfilled all of Answer Iowa's contractual obligations with respect

to delivery of possession of the equipment for both the initial and any subsequent lease terms. Therefore, taxation by Illinois of Answer Iowa's receipts from the leasing of pager and mobile telephone equipment would also be invalid under the *McLeod* decision.

■ Finally, as of 1945, Illinois could not have collected from Answer Iowa a use tax on receipts from the leasing of the equipment in question. It has long been held that businesses may be required to collect use taxes on sales made to residents of States other than those in which they have their principal offices only if they have certain minimum contacts with the other States. Examples of such minimum contacts are retail stores or offices located in the other States or the business regularly sending employees into such States to solicit business. (*E.g., General Trading Co. v. State Tax Com.* (1944), 322 U.S. 335, 88 L. Ed. 1309, 64 S. Ct. 1028; *Nelson v. Montgomery Ward & Co.* (1941), 312 U.S. 373, 85 L. Ed. 897, 61 S. Ct. 593.) In the present case, there is no evidence that Answer Iowa maintained offices in Illinois or sent employees or agents into Illinois for the purpose of soliciting business.

■ In support of its contention that communications between individuals located in Illinois handled by Answer Iowa are purely intrastate commerce, and thus not subject to the protection of the commerce clause, the Department cites *Green v. Western Union Telegraph Co.* (Fla. 1960), 123 So. 2d 712. There, the court held that telegraph messages between two parties located in the same State, which travel outside the State for transmission purposes only, are subject to State taxes on all charges therefor, except those charges related to use of the out-of-State transmission facilities.

*Green* is factually distinguishable from the case at bar. In *Green,* the State through which some of the telegraph messages passed before reentering Florida did not seek to tax them. In fact, it appears that the second State could not have imposed any tax on such messages, because it was not absolutely certain which of the messages passed through that State. In the present case, by contrast, it is undisputed that *all* of the messages from which the receipts which the Department seeks to tax were derived, passed through Answer Iowa's Davenport, Iowa, office, and it is apparently on that basis that Iowa imposed taxes on them.

The Department concedes that messages from Illinois locations to points outside Illinois are not subject to the Act. As for messages between Illinois points, we need not determine whether those messages are interstate commerce. The basis for our so concluding is that the Department's method of calculating the amount of Answer Iowa's revenues attributable to messages between individuals located in Illinois—

which assumes that all revenues received from customers with Illinois billing addresses are attributable to such messages—is not an accurate means of determining the amount of such revenue.

The Department places great reliance on the method of tax calculation approved in *Sinclair Refining Co. v. Department of Revenue* (1971), 50 Ill. 2d 201, 277 N.E.2d 858. In *Sinclair*, the court held that an oil company was entitled to a credit against its retailers' occupation tax liability with respect to towboat refueling which occurred on the Missouri side of the Mississippi River, even though it was impossible to determine with any degree of certainty whether particular instances of refueling occurred on the Illinois or Missouri side of the river.

The method of tax calculation which the Department utilized in the present case is far less likely to approximate the tax liability than was the method utilized in *Sinclair*. The Department produced not a shred of evidence to support the reasonableness of its method of calculation of Answer Iowa's tax liability. At a minimum, the Department's method of calculation ignores the reality that in a large metropolitan area straddling a border between two States, such as the "Quad Cities" area of Illinois and Iowa, calls of a purely local nature very often cross the State line.

We agree with the Department's contention that a decision favorable to Answer Iowa would mean that under the applicable law, a method of avoiding payment of State taxes on intrastate telecommunications may be to reroute messages through a second State. However, this fact does not provide a basis for holding that taxation of receipts here involved is permissible under the Messages Tax Act.

In view of the conclusions which we have reached, we need not consider whether the hearing referee's finding that the messages tax was imposed only on Answer Iowa's receipts for the rental or leasing of equipment is contrary to the manifest weight of the evidence.

■ Because the Department's method of calculating Answer Iowa's alleged tax liability did not meet "some minimum standard of reasonableness" (*Masini v. Department of Revenue* (1978), 60 Ill. App. 3d 11, 14, 376 N.E.2d 324, 327), we reverse the circuit court's judgment and remand this cause with directions to reverse the Department's administrative decision which Answer Iowa appealed to the circuit court.

Reversed and remanded with directions.

SPITZ, P.J., and McCULLOUGH, J., concur.